UNITED STATES *v.* BOSCH MAGNETO CO. (No. 2655) [1]

1. CONFLICT OF LAWS—TARIFF ACTS OF 1913 AND 1922..
   The Tariff Act of 1922 took effect on the day following its passage. Secs. 1 and 646. It was approved September 21, 1922. Goods imported on that date were dutiable under the act of 1913.

2. EVIDENCE—JUDICIAL NOTICE—AUTOMOBILE LAMPS AND HORNS.
   It is a matter of common knowledge that lamps and horns are necessary to the safe, efficient, and proper operation of automobiles. Accordingly they are parts of automobiles under paragraph 369, Tariff Act of 1922, rather than miscellaneous manufactures of metal under paragraph 399.

United States Court of Customs Appeals, February 25, 1926

APPEAL from Board of United States General Appraisers, Abstract 49546

*William W. Hoppin*, Assistant Attorney General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.
*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellee.

---

[1] T. D. 41434.

[Oral argument January 19, 1926, by Mr. Igstaedter and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of magnetos, generators, spark plugs, horns, lamps, ignition parts, coils, lighting parts, and starting sets, which were assessed for duty at the rate of 40 per centum ad valorem as manufactures of metal under paragraph 399, of the Tariff Act of 1922, with the exception of one of the protests involved, No. 972586–5193, the merchandise of which consists of spark plugs, and which goods were assessed for duty under the Tariff Act of 1913, as finished parts of automobiles, at 30 per centum ad valorem.

The Board of General Appraisers sustained the protests of the importer, except as to hydrometers invoiced as "*sauremess-spritzen*" and certain tools invoiced as "*wekk-zenge.*" As to the excepted merchandise the protests were overruled.

Section 1 of the Tariff Act of 1922 provides:

SEC. 1. That on and after the day following the passage of this act, except as otherwise specially provided for in this act, there shall be levied, etc.   *   *   *

Section 646 of the same act provides:

SEC. 646. Unless otherwise herein specially provided, this act shall take effect on the day following its passage.

The act was approved September 21, 1922.

It seems clear that the goods, represented by protest 972586, imported on September 21, 1922, should be subject to the duty provisions of the act of 1913. This, no doubt, was overlooked by the board and its action as to this protest must be reversed.

The only contested question, raised by the Government, requiring our attention is the proper classification of certain auto lamps and horns involved in several of the protests.

It is the contention of the importer that the lamps and horns in controversy as well as the other merchandise, excepting protest 972586, are dutiable at 25 per centum under paragraph 369 as parts of automobiles, which paragraph reads as follows:

369. Automobiles, automobile bodies, automobile chassis, motor cycles, and parts of the foregoing, not including tires, all of the foregoing whether finished or unfinished, 25 per centum ad valorem:   *   *   *

The Government insists that the horns and lamps are dutiable under paragraph 399 of the Tariff Act of 1922 as manufactures of metal, n. s. p. f.; that the horns and lamps are not parts of automobiles but are accessories; that automobiles are complete without

them. Its main argument is based upon the proposition that the use of the lamps and horns is optional rather than essential. The Board of General Appraisers sustained the importer's position and held the merchandise to be essential parts of automobiles. One of the considerations which evidently influenced the board in this view, and is referred to in its opinion, is the fact that the law requires them to be used and "makes them in a sense more indispensable than other articles which are concededly parts of automobiles." The Government challenges this portion of the board's decision on the theory that the board took judicial notice of municipal ordinances, and that, while it has the right to take judicial notice of State and Federal laws, it has no right to be influenced by the consideration of unproven municipal ordinances.

There is nothing in the board's opinion to indicate that it took judicial notice of the existence of municipal ordinances, and we regard that question out of the case.

The testimony shows that the merchandise in controversy is used almost exclusively upon automobiles and to a very limited extent for motor boats. Before this court the goods in controversy were treated as if used for automobile purposes exclusively. The sole question was as to whether they were parts of automobiles or accessories to automobiles.

Funk and Wagnalls' New Standard Dictionary defines "part" as follows:

Part: 1. A certain portion or amount of anything; a portion of something, either separated from the rest or thought of or mentioned apart from the rest; that which goes with others to constitute the whole; a piece, segment; fraction; section; as, the whole is equal to the sum of all the parts; the story appeared in parts.

2. One of certain fractional portions or components of a thing; an aliquot division; a submultiple; as, a fifth part; also, proportion, as in a recipe.

3. An essential or component portion of a body or an organism; a portion having a distinct function or office; an organ; a member; as, the parts concerned in digestion.

The same dictionary defines "accessory" as follows:

Accessory: 1. A person or thing that aids subordinately the principal agent; an adjunct; accompaniment.

It would serve no good purpose for this court to attempt to define "parts" and "accessories," when used in a tariff sense, with any more definiteness than is embodied in the above definitions and we will not attempt to do so.

We agree with the board, however, that the lamps and horns in controversy are parts of automobiles, and we find no fault with that part of the board's opinion indicating that it was influenced in its decision in determining that they were parts of automobiles

by the fact that the law required the use of horns and lamps on automobiles.

We think lamps and horns are essential and necessary parts of automobiles and that automobiles can not be efficiently, safely, or properly operated without them. Even if we were to adopt the test made in certain cited cases where, if the use is optional, it is not "a part," we would not regard our views in this case as in conflict with decided cases, since it is a matter of common knowledge that the use of lamps and horns is not optional if the operator of the machine operates it in a safe, efficient, and proper manner. The machine could be operated without mud guards, without tires, and without a wind shield, and yet it is obvious that they are necessary and generally required if the machine is to be operated in its usual manner. To operate an automobile without lights would certainly limit it to day operations, and the use of a horn or some other sounding device is usually so essential to the safety of the operator of the car and to the public in general as to make its use almost indispensable.

T. D. 34998, G. A. 7650, 27 Treas. Dec., p. 627; *Schoverling* v. *United States*, U. S. Circuit Court, Southern District of New York, T. D. 26972, 11 Treas. Dec. 22; *Mead Cycle Co.*, G. A. 7700, 28 Treas. Dec. 389; G. A. 7219, 20 Treas. Dec. 926; G. A. 6855, 17 Treas. Dec. 46; *United States* v. *Kalter Mercantile Co.*, 11 Ct. Cust. Appls. 540, were cited by the Government as supporting its contention.

T. D. 34998, G. A. 7650, 27 Treas. Dec. 627, holds that tripods were not dutiable as parts of cameras because their use was optional rather than essential. For obvious reasons we do not think this decision is in conflict with our holding herein.

In the *Schoverling* case, *supra*, rubber recoil pads intended to take the place of the heel plates of guns were held not to be dutiable as parts of guns, since their use was optional. With this opinion we do not disagree. We do not know what the evidence in that case showed, but it probably was to the effect that the rubber recoil pad was only applied to the gun after removing the heel plate, and that the gun with the heel plate was a complete gun and could be efficiently, safely, properly, and even comfortably operated without the necessity of a pad.

In the *Mead Cycle Co.* case, *supra*, cycle lamps, pump clips, pumps, push bells, and tool bags, were held to be accessories and not parts of bicycles. The difference in the manner of operating a bicycle and an automobile, and the results growing out of their inefficient operation are so different that it is at once apparent that the decision in the Mead case has little, if any, bearing on the facts at hand.

G. A. 7219, 20 Treas. Dec. 926, involved automobile horns and metal-mounted india-rubber bulbs. The bulbs were packed with the horns, although separate. The chief question in the case was as to whether they were entireties or whether they should be separately assessed. True, the board assessed the bulbs and horns as entireties, and held them dutiable as articles of metal, and denied the importer's contention that the bulbs should be assessed separately as being in chief value of india rubber. It is apparent that the question raised in this case was not considered in that case, and that no contention was raised as to their being parts of automobiles.

G. A. 6855, 17 Treas. Dec. 46, referred to parts of clocks and has no bearing on the facts in this case.

The case of *United States* v. *Kalter Mercantile Co.*, *supra*, cited by the Government in support of its contention, we think only emphasizes the strength of our position here, and the Government's quotation from the opinion supports our contention, and is as follows:

We are of the opinion that even though it be considered that the boots and the straps were designed to be used together, when desired, and were sold together by the importers, yet, when used together, each retains its identity, name, and character; each is a separate entity; and when attached, each performs its separate function without loss of any of its essential characteristics. The boot remains a boot and the leather strap remains a leather strap. When separated the boot remains useful as a boot. It retains its commercial entity and remains complete in itself, a rubber boot. The leather strap also retains its essential character and commercial entity, and remains complete in itself, a leather strap, or, as has been suggested, a leather belt.

We have in mind also, and have given consideration to, the applicability of *American Express Co.* v. *United States*, 2 Ct. Cust. Appls. 312. This case involved the question as to whether bayonets for use on muskets were parts of muskets, or were side arms, under the tariff act of 1897. The court held that the bayonets were not parts of muskets and pointed out the fact that when they were "attached to musket or rifle the bayonet impedes the successful use thereof in firing, which is concededly the prime purpose of its use and existence." The court further stated: "In other words, the bayonet is an auxiliary weapon to be attached to the musket or rifle in actual warfare under certain conditions; is not ordinarily so attached, and when unattached and carried by the soldier is worn in his belt like other side arms. Then, again, both rifles and muskets have large uses other than for purposes of war, and in such cases the bayonet would not seem to be any part thereof."

The judgment of the Board of General Appraisers is *affirmed*, except as to protest 972586–5193, which is *reversed*.

*Modified.*