(C. D. 136)

L. OPPLEMAN, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 27, 1939)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard H. Welsh*, specia l
attorney and *Joseph A. Howard, Jr.*, junior attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising
at the port of New York, brought to recover certain customs duties
alleged to have been improperly exacted on particular importations
of marine compasses. Duty was levied thereon at the rate of 45
per centum ad valorem under paragraph 397 of the Tariff Act of 1930
as manufactures of metal not specially provided for. It is claimed
that said articles are properly dutiable at but 30 per centum ad
valorem under paragraph 370 of said act as parts of motorboats.
The latter paragraph reads as follows:

PAR. 370. Airplanes, hydroplanes, motorboats, and parts of the foregoing,
30 per centum ad valorem. The term "motorboat," when used in this Act,
includes a yacht or pleasure boat, regardless of length or tonnage, whether sail,
steam, or motor-propelled, owned by a resident of the United States or brought
into the United States for sale or charter to a resident thereof, whether or not such
yacht or boat is brought into the United States under its own power, but does not
include a yacht or boat used or intended to be used in trade or commerce, nor a
yacht or boat built, or for the building of which a contract was entered into,
prior to December 1, 1927.

The plaintiff offered in evidence the testimony of Samuel E. Sanders,
secretary and general manager of the plaintiff corporation. He testi-
fied that the compasses constituting the imported merchandise at bar
were similar in all material respects to those which formed the subject
of *L. Oppleman, Inc.* v. *United States*, T. D. 48522, 70 Treas. Dec. 313,

and the record in that case was incorporated herein without objection on the part of counsel for the Government.

This same witness had previously testified in the incorporated case to the effect that he had sold the compasses there in question to marine supply dealers and sporting goods stores in New York City and throughout the United States; that he had observed their use several times on fishing trips; that the compass was installed in the fore part of the boat for navigation purposes and that he had never seen a compass like Exhibit 1 (the sample there and here introduced in evidence) used for any other purpose.

On cross-examination at the previous trial he testified that he had seen one of the compasses used on a 40-foot and a 50-foot launch; that he had not seen it on an ocean-going boat and that he had never seen a boat which had no compass at all.

On cross-examination in the instant case the witness testified that he was not a navigator and was not familiar with marine navigation or with plotting a course; that he had testified in the incorporated case that he had sold the compasses there in question to marine supply dealers, sporting goods concerns, and to retailers; that they were purchased at retail by boat owners for installation on their boats; that he had seen possibly twenty-five motorboats, from 15 to 50 feet in length; that he could not recall having seen any of such boats without compasses; that he had never been to a motorboat show; that he had never bought a motorboat, but had operated a 30-foot boat with an old Dodge motor at Yorktown, Va.; that said boat had a compass, but no charts, tachometer, taffrail log, or speed indicator, nor did it have any place for charts, dividers, compass, or other necessary equipment for laying out a course; that it had nothing but a compass for blind reckoning in a fog; and that he had never installed a compass on a boat nor seen one so installed.

On redirect examination he testified that he had been on possibly fifteen motorboats of various sizes and that he was aboard a 30-foot boat at Yorktown, Va., off and on for about ten days.

In the incorporated case the plaintiff offered in evidence the testimony of Leland Grace, who testified that he had been a navigator of yachts for about eighteen years; that the vessels he had navigated were pleasure yachts, power and sail boats, ranging from 22 to 150 feet in length; that he had navigated such boats up and down the Atlantic and Pacific coasts and on the Great Lakes; that he had observed compasses like Exhibit 1 on the bridge of both power yachts and sail boats innumerable times; that he had used an article like Exhibit 1 in steering a course; that a compass like Exhibit 1 is placed in the wheelhouse in front of the steering wheel; that it must be attached to the boat to function properly; that a compass of some sort

is absolutely essential to every boat, and that he had never observed a compass like Exhibit 1 being used on anything but a boat.

On cross-examination he testified that in some cases where a navigator was thoroughly acquainted with the body of water where there was good visibility, a boat could be navigated without a compass.

On redirect examination he testified that it was impossible to operate a boat without a compass in a fog or where the visibility was not good, and that all pleasure, motor, or sail boats use compasses like Exhibit 1.

Asked how the compasses in question were chiefly used, he answered "chiefly on pleasure boats," and that compasses of a larger size, although of the same general construction, were used on commercial vessels.

On recross-examination he testified that as a result of his eighteen years' experience he had observed that the use of compasses like Exhibit 1 is confined mostly to pleasure boats.

The Government offered in evidence the testimony of two witnesses. The first, Petros D. Mills, a lieutenant, senior grade, in the United States Coast Guard, testified that he had been at sea for interrupted periods for possibly twenty years; that he had navigated both commercial and Government vessels and had taught navigation to service men who were being trained for the position of warrant officers; that he was familiar with marine compasses and their uses; that at the present time, as a member of the Boarding Division of the Coast Guard, it was his duty to check all vessels in the district extending from New London, Conn., to Cape May, N. J., to see that they had the equipment required by law; that he knew of no law or regulation that required a motorboat to carry a compass as part of its standard equipment; that under the act of June 9, 1910 (a copy of which with the regulations of the Department of Commerce thereunder was admitted in evidence as illustrative Exhibit B), motorboats are divided into three classes as follows:

Class 1—under 26 feet in length
Class 2—from 26 feet to 45 feet in length
Class 3—from 45 feet to 60 feet in length;

that all motorboats are required to carry a life preserver for each person aboard, a combination light, and an effective means for extinguishing burning gasoline; that in addition motorboats of classes 2 and 3 are required to have separate side lights and a bell and whistle; that the jurisdiction of the Coast Guard extends to all of the waters of the United States; that a motorboat would function very well without a compass; that he had operated several thousands of motorboats and had seen many without a compass; that he had never seen a compass on a boat 30 or 35 feet in length on an inland lake; that a motorboat going out of sight of land should have a compass

aboard; that in addition such boat should have a chart, an article known as parallel rules, and some method of determining the speed of the boat and therefore the distance traveled; that these latter devices are necessary for the laying out of a course but after such a course is laid out a compass is necessary to keep on the course; that a vessel cannot be navigated safely by a compass alone; that a compass must be properly installed and mounted in order to be effective; that in his work he had used Coast and Geodetic Survey Chart 1215, a duplicate of which was admitted in evidence as Illustrative Exhibit A; that, referring to the said chart, it would be impossible to navigate a boat from Babylon to Sheepshead Bay, Long Island, with the aid of a compass alone; that other things should be included in the equipment, but that a compass should be included in such equipment; that in the witness' opinion the compass was not necessary to operate a motorboat and that a compass on a motorboat used by an inexperienced person is more of a liability than an asset; and that it is necessary for the compass box to be fastened securely in order that it may function correctly.

On cross-examination he testified that on small pleasure boats compasses are usually mounted on a brass binnacle directly in front of the steering mechanism; that a compass in the hands of an experienced navigator was not a liability; that vessels going out of sight of land, with the possible exception of fishing boats, usually have a compass; that on a large body of water and out of sight of land or in a fog or storm a compass would be necessary to the efficient use of the boat; that he had operated a pleasure boat without a compass within sight of land on a cloudy day on Sebago Lake, Maine; that when he was on that lake he was not out of sight of land most of the time; that on the open ocean in a storm or fog a compass would be very desirable; that a vessel's course is usually laid out ahead of time; that in making a 100-mile trip in the absence of landmarks a compass would be necessary; that charts are usually carried in portfolios, or rolled up in metal cylinders, and are not physically attached to the boat; that the parallel rules are usually carried in a cylinder with the chart, and the sextant carried in a separate box; and that a motorboat would be *able to operate* without many things in the way of equipment required by Federal statute.

On redirect examination the witness testified that pleasure boats usually operate in waters where there are landmarks.

On recross-examination the witness testified that in the absence of landmarks a compass is necessary to the efficient use of a boat, and that, assuming knowledge of the variations of the compass, its use would indicate the direction in which the vessel was moving.

The second and last witness for the Government, Nicholas G. Rost, sales engineer for Roberto Hernandez Inc., testified that his company

exports, among other things, motorboats; that he was a member of the National Association of Motor Boat Manufacturers; that he had attended every motorboat show in New York since 1908; that he had visited many factories where motorboats are manufactured and many show rooms of motorboat dealers; that he was familiar with the equipment of such boats when they were sold and put into commission; that he was familiar with the catalog of the so-called Century Motor Boats, which catalog was marked as Illustrative Exhibit C for Identification; that no Century Boat, either in this country or for export abroad, is equipped with a compass.

Counsel for the Government then offered in evidence certain catalogs of the Chris-Craft and Gar Wood companies, manufacturers of motorboats, which were marked Collective Illustrative Exhibits D and E, respectively, for identification. These exhibits and the witness' testimony regarding same were excluded at the trial on the ground that the witness' knowledge was based on hearsay. In both cases the Government made an offer to prove that the witness, if permitted, would testify that none of the boats described in said catalogs was equipped with a marine compass when sold in the trade. The witness was permitted to testify that all of the motorboats that he had ever sold had no compasses.

Upon this record counsel for the Government, in his very complete and exhaustive brief herein, contends that although it is uncontradicted that these compasses are used on motorboats, nevertheless they are not parts of such motorboats within the meaning of paragraph 370 of the Tariff Act of 1930 and cites numerous decisions as allegedly supporting such contention. We have carefully examined all of such cases cited by counsel and do not agree with his contention. On the contrary, some of the authorities would seem to support the view that these compasses are parts of motorboats within the contemplation of said paragraph.

For instance, in the cited case of *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T. D. 35338, there was involved the question of the dutiable classification of certain machine tools and numerous drills accompanying same used in connection therewith. Duty was levied thereon under paragraph 199 of the Tariff Act of 1909 as manufactures of metal not specially provided for. It was claimed that the articles were properly dutiable under paragraph 197 of said act as machine tools. In holding that each and every one of said parts constituted an integral and component part of the machine tool, the court said:

> It will be noticed that paragraph 197 contains no provision for parts of machine tools; hence thereunder the pertinent question here is what are the constituent parts of the machine tools in this case.
> We think, speaking generally, the true interpretation of the paragraph is that any detachable or adjustable parts of a machine tool which are indispensable to

enable it to perform the manifold operations for which it is designed, if imported therewith, not including reserve, duplicate, extra, or spare parts or purely hand tools or appliances, and not including belts designed to connect the tool with the motive power, are properly parts of a machine tool. To illustrate, one importing a machine tool designed to drill metal with drills of varying sizes would be entitled to import therewith as a constituent part thereof one set of the detachable, adjustable parts necessary and required to enable it to drill all the different sized holes for which it was designed, because otherwise it could perform only a part of its functions, while its availability, desirability, and practical use and value might depend upon its ability to drill holes of different sizes.

By this decision the appellate court laid down the rule that where an article is *eo nomine* provided for, the provision will include as an integral part of such article any other article which is necessary to enable the named article to perform all of the manifold functions for which it was designed.

In the instant case it is uncontradicted that these compasses are necessary to the efficient and safe operation of a motorboat when out of sight of land or in a fog. The fact that these compasses are not necessary on motor boats, particularly small boats, when operated within sight of land or in inland waters or harbors where there is visibility, is immaterial. The fact remains that they do become absolutely essential if the boat is to be used out of sight of land or in a fog or where there is not proper visibility.

In the case of *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434, also cited by counsel for the Government, the appellate court in holding certain lamps and horns to be parts of automobiles within the meaning of paragraph 369 of the Tariff Act of 1922, after stating that it found no fault with the fact that this court (then the Board of United States General Appraisers) had been influenced in its decision by the fact that the law required the use of horns and lamps on automobiles, said:

We think lamps and horns are essential and necessary parts of automobiles and that automobiles cannot be efficiently, safely, or properly operated without them. Even if we were to adopt the test made in certain cited cases where, if the use is optional, it is not "a part," we would not regard our views in this case as in conflict with decided cases, since it is a matter of common knowledge that the use of lamps and horns is not optional if the operator of the machine operates it in a safe, efficient, and proper manner. The machine could be operated without mud guards, without tires, and without a wind shield, and yet it is obvious that they are necessary and generally required if the machine is to be operated in its usual manner. To operate an automobile without lights would certainly limit it to day operations, and the use of a horn or some other sounding device is usually so essential to the safety of the operator of the car and to the public in general as to make its use almost indispensable.

To deny that the compasses in question, which according to the evidence are exclusively used on motorboats and which in order to be

accurate are rigidly attached to said boats, are parts of said boats, would result in limiting the use of such boats to such weather and to such waters where land would always be in sight and visibility plain. Just as the absence of a lamp would limit the safe and efficient operation of an automobile to daylight, so the absence of a properly installed compass would limit the safe and efficient operation of a motorboat to waters in sight of land and to clear weather.

In the case of *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, Abstract 10233, 56 Treas. Dec. 909, this court had under consideration the question of the dutiable classification of certain direction indicators, switches, signal rings, etc., which when assembled constituted complete mechanical direction signals used exclusively on automobiles. In holding such articles to be parts of automobiles within the meaning of paragraph 369 of the Tariff Act of 1922, we said:

> We believe direction signals are necessary for the safe, efficient, and proper operation of automobiles. While the use of the mechanical devices under consideration is not mandatory, some direction signal must be given. Hence, since the present articles can serve no other purpose than as direction signals on automobiles, and as such signals are essential for the efficient operation of the vehicles, we therefore hold the merchandise under consideration to be properly dutiable at the rate of 25 per centum ad valorem under paragraph 369 of the act of 1922 as parts of automobiles, as alleged by plaintiff. *United States* v. *Bosch Magneto Co.* (13 Ct. Cust. Appls. 569; T. D. 41434).

From the entire record we therefore see no reason for not adhering to our decision in the incorporated case of *L. Oppleman, Inc.* v. *United States*, T. D. 48522, 70 Treas. Dec. 313, and consequently hold as a matter of law that the compasses constituting the imported merchandise at bar are properly dutiable at the rate of 30 per centum ad valorem under paragraph 370 of the Tariff Act of 1930 as parts of motorboats, as alleged by the plaintiff. That claim is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.