(C. D. 481)

CLOSE & STEWART v. UNITED STATES

United States Customs Court, Second Division.

(Decided April 30, 1941)

*Harper & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiffs.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard F. Weeks* and *Joseph E. Weil*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of Seattle, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of bicycle tires and horns. Duty was levied on the tires at the rate of 30 per centum ad valorem under paragraph 371 of the Tariff Act of 1930 as parts of bicycles, and on the horns at the rate of 45 per centum ad valorem under paragraph 397 of said act as manufactures of metal not specially provided for. It is claimed that the tires are properly dutiable at but 10 per centum ad valorem under paragraph 1537 (b) of said act as bicycle tires composed wholly or in chief value of rubber. The horns are claimed to be properly dutiable at the rate

of 30 per centum ad valorem under said paragraph 371 as parts of bicycles.

At the first hearing, held at Seattle on November 13, 1939, on protest 922874–G, the plaintiffs offered in evidence the testimony of Harold Bower, receiving clerk of the Spokane Cycle & Toy Co., the ultimate consignee and actual importer of the merchandise at bar, who testified that he was familiar with said merchandise. A copy of the consular invoice having been marked exhibit 1 for identification, the witness testified in part as follows:

By Mr. CARPENETI.

Q. I show you the consular invoice again, and ask you whether or not it covers complete bicycles?

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

A. No, it doesn't &ast; &ast; &ast;.

Q. Now would you tell us what parts were missing from the bicycles?—A. Well, let's see, the handle bars, for one, and the front hubs were less, and the rear hubs were less; that is, on certain models, you see.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. Now I call your attention to the recitation on case number 52, does that contain some of the hubs and spokes that were listed as missing from it?—A. Yes. &ast; &ast; &ast;

Q. But the handle bars and brakes were missing?—A. They were missing.

Q. Now, are there any other types of bicycles on this particular importation?—A. The American model, number 1, they have; that is the 20 x 18-inch cycle.

Q. Were there any parts missing from that particular type bicycle?—A. Yes, that was less handle bars, brakes, free wheel, and then they have also the rear hub less. &ast; &ast; &ast;

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. Now, did the Spokane Cycle & Toy Co. add handle bars and brakes and hubs prior to the sale of these bicycles?—A. Yes.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. And what kind of handle bars were added?—A. Do you mean in our American make?

Q. In these, to these bicycles.—A. Well, there were none added to this at all. We used our own merchandise that was made in the United States on that.

Q. Yes. Well, I mean what type of merchandise did you use? Could you describe it to the court?—A. Well, it is a 24 x 6 handle bar. They call it California bar. Other cycles, they use the 30 x 12.

Q. Does that differ from the handle bars that are made in England?—A. Yes.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. The bicycles as imported were not complete, is that true?—A. Yes.

Q. And they could not be operated as bicycles in the condition in which imported?—A. No.

On cross-examination the witness testified in part as follows:

By Mr. WEEKS.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

X Q. And in telling us what parts of bicycles were missing you have testified from the invoice, have you not?—A. Yes.

X Q. Have you any recollection distinct from the invoice that those particular parts were missing from the importation?—A. Yes, I have.

X Q. You have?—A. Yes.

X Q. You are not depending on the fact that the invoice states that the bicycle is less hubs less handle bars, as the case may be?—A. No.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Well, now, did you examine all the subsequent importations of bicycles and bicycle parts that your concern made?—A. Yes, I have.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X. Q. And how do you know that the handle bars and the rear hubs were American-made parts?—A. Well——

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A. Because Torrington, back in Torrington, Connecticut, they make our handle bars, and Elyria, New York—wherever it is—they make the Eclipse rear hub, coaster brake, and we use that.

Judge CLINE. In other words, you never use these parts of anything except American-made?

The WITNESS. Yes.

Judge CLINE. Is that true in all cases?

The WITNESS. Yes, it was, unless it was a year or so before this one.

Judge CLINE. Well, in this particular case?

The WITNESS. Yes.

At the conclusion of the testimony the case was continued to the next Seattle docket.

At the second hearing, held at Seattle on February 29, 1940, protest 977672–G was consolidated with protest 922874–G. It was also stipulated by and between counsel for the respective parties that the bicycle tires involved herein were in chief value of rubber.

At this second hearing the plaintiff offered in evidence the testimony of Thomas M. Fristoe, United States examiner of merchandise at the port of Seattle, who testified that he examined the merchandise covered by protest 977672–G. He then testified in part as follows:

Q. Now, referring to entry 3, can you tell the court what was contained in that shipment, \* \* \*?—A. Yes. From my notations that were made here there were 25 pairs Dunlop oversize, 26″ x 2″, covers, for bicycles. They are invoiced separately, but they cover the bicycles that were invoiced, which were complete with the exception of the handle bars, brakes, stems, coaster hubs, carrier stands, less tubes and spokes.

Q. Now have you had an opportunity to examine entry 88?—A. This is a little bit more involved.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Limiting your testimony now to the so-called bicycles—we will come later to the tires—you say that they consisted of complete bicycles?—A. Yes, sir.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. I call your attention to the consular invoice which is covered by entry 96–S, and ask you if you examined that merchandise which is covered by protest 922874–G?—A. Yes, sir, I did.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Did they consist of complete bicycles?—A. Yes, sir.
*      *      *      *      *      *      *

Q. Now, I call your attention to the invoice, referring to case 51, particularly to the language contained therein, "less H bars, and brakes, rear hub, and free wheels."
*      *      *      *      *      *      *

..Q. .Have you looked at that?—A. Yes, sir.

Q. On the basis of that notation are you prepared now to change your testimony?
*      *      *      *      *      *      *

A. I have no desire to misinform the court.   I was under a misapprehension.
*      *      *      *      *      *      *

Judge DALLINGER. In other words, from looking at the invoice you would say that those were not complete bicycles?

The WITNESS. Yes, sir.

By Mr. CARPENETI.

Q. The same would apply, would it not, to the items in 52, 53 and 54?—A. The bicycles as imported were in different cases, and it would apply to the different cases; the parts would be distributed in all four cases.
*      *      *      *      *      *      *

Q. And the parts which were missing were the handle bars?—A. The handle bars, the brakes, and rear hub, on the free wheel.   *   *   *.

Judge DALLINGER. Mr. Witness, at Spokane a witness testified in this case, as I understand it, that in all of these cycles covered by these invoices there were certain parts missing that were supplied from American manufactured goods. Now is that what you found?

The WITNESS. In this invoice that is true, your Honor.

On cross-examination the witness testified in part as follows:

X Q. Have you found separate importations of handle bars from this concern, the Hercules Cycle & Motor Co.—have you ever found any importations of handle bars?—A. I wouldn't say that I have.
*      *      *      *      *      *      *

X Q. Now, did you ever see horns similar to Exhibit 1 in use?—A. Yes, sir.

X Q. Where?—A. In Spokane.

X Q. How did you see them used?—A. At numerous places.

X Q. Will you mention the places?—A. They were frequently used on children's velocipedes, on bicycles, on automobiles.

X Q. Is Exhibit 1 referred to on the invoices as post horns?   Is that what they are referred to as on the invoice?   *   *   *.—A. Post horns were on that invoice.

Upon this record counsel for the Government in his brief filed herein contends that all of the bicycle tires at bar were properly classified by the collector as parts of bicycles, and cites in support of such contention the decisions in *Auto Import Co.* v. *United States*, T. D. 29599, 17 Treas. Dec. 200, and *Distributing & Importing Co. et al* v. *United States*, T. D. 37491, 34 Treas. Dec. 36.

We have examined the cited decisions and are satisfied that they involved facts different from those here present and the issues therein arose under other and differently phrased tariff acts. In our opinion the cited decisions have no application to the instant case.

In the recent case of *Close & Stewart* v. *United States*, 2 Cust. Ct. 318, C. D. 151, we had before us an importation consisting of 25 complete bicycles shipped in a knocked-down condition, and we held that the tires being integral parts of the complete bicycles had lost their identity as tires. We said:

* * * Did Congress intend that tires should be separated from complete bicycles and classified under said provision in paragraph 1537 (b), or was said provision applicable only when bicycle tires were imported as separate and distinct entities unaccompanied by the other parts necessary to make complete bicycles?

In the instant case, according to the uncontradicted evidence, no complete bicycle was contained in the present importations. Therefore, it is an established fact that the imported tires did not constitute parts of any complete bicycle. Hence they must be treated as separate dutiable entities and be classified accordingly. As such separate entities they are expressly excluded from said paragraph 371 which, so far as here pertinent, reads: "Bicycles, and parts thereof, not including tires, 30 per centum ad valorem." Manifestly, then, the present bicycle tires, being separate entities and in chief value of rubber must necessarily be classified under the specific and *eo nomine* provision in said paragraph 1537 (b) for "bicycle tires composed wholly or in chief value of rubber" and held dutiable thereunder at the rate of 10 per centum ad valorem, as alleged by the plaintiffs. That claim is therefore sustained.

As to the involved horns, since there is no proof that they are chiefly used as necessary and integral parts of bicycles, that claim of the plaintiffs must be and hereby is overruled. *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434.

Judgment will be rendered accordingly.