(C. D. 1292)

A. MASCHMEIJER, JR., INC. *v*. UNITED STATES

United States Customs Court, First Division

(Decided January 11, 1951)

*John D. Rode* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Arthur R. Martoccia*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: This protest involves the classification status for tariff purposes of a substance described on the invoice as "Dementholized Corn Mintoil." It was assessed with duty at the rate of 25 per centum ad valorem under the provision in paragraph 58 of the Tariff Act of 1930 for peppermint oil, and is claimed to be properly dutiable at only 12½ per centum ad valorem under the provision in the same paragraph, as amended by the French Trade Agreement, T. D. 48316, for "all other essential and distilled oils not specially provided for." For convenience, the entire text of both provisions is set forth in the margin.[1]

[1] PAR. 58. Oils, distilled or essential: Lemon, grapefruit, and orange, 25 per centum ad valorem; eucalyptus, 15 per centum ad valorem; clove, peppermint, patchouli, sandalwood, and all other essential and distilled oils not specially provided for, 25 per centum ad valorem: *Provided*, That no article mixed or compounded with or containing alcohol shall be classified for duty under this paragraph.

As modified by the French Trade Agreement, T. D. 48316:

Oils, distilled or essential: Clove, patchouli, sandalwood, and all other essential and distilled oils not specially provided for, not containing alcohol, 12½ % ad. val.

There seems to be no question but that the involved oil is a distilled or essential oil not mixed or compounded with, or containing, alcohol, the sole question at issue being whether it is embraced within the provision for peppermint oil under which it was classified, the plaintiff maintaining the negative in this regard.

Witnesses for both the plaintiff and for the defendant are in agreement that there is a volatile oil obtained from the plant *Mentha piperita* which is known and recognized commonly, commercially, and scientifically in the United States as peppermint oil. The oil here in question is a volatile oil obtained from the plant *Mentha arvensis*. The record shows that such oil is variously known as cornmint oil, Brazilian peppermint oil, and as Japanese peppermint oil, and that sometimes the word "dementholized" is added to the name. The significance of the word "dementholized" in the invoice description of the merchandise at bar was not directly explained in the record, but it would appear proper to infer from certain exhibits received in evidence that the oil in question had been partially dementholized, that is to say, some, but not all, of the menthol had been removed from it prior to importation.

It is the defendant's position that the provision for peppermint oil in the tariff act includes all forms, varieties, or species of peppermint oil, and that the oil in question falls within that category.

Counsel for both parties have explored the issue from all aspects, and have offered evidence treating of the common, commercial, and scientific meanings of the term "peppermint oil," as well as the physical and chemical properties thereof, and of cornmint oil, and the uses to which they may be put.

There is no contention here by either party that the commercial meaning of the term differs from the common meaning, so there is no question of the invocation and application of the rule of commercial designation.

On behalf of the plaintiff there was offered and received in evidence as exhibit 2 a sample of oil identified by the chief chemist and manager of the plaintiff as dementholated cornmint oil such as is here involved. There was also received in evidence without objection as exhibit 3 a sample identified by the same witness as peppermint oil. At this point it may be said that the evidence offered by the plaintiff establishes, and it does not appear to be disputed by the defendant, that the physical and chemical characteristics of peppermint oil as represented by exhibit 3 differ from those of cornmint oil as represented by exhibit 2 in that peppermint oil has a pleasant, aromatic, minty odor and a taste described as "not bitter," while cornmint oil "has somewhat of a bitter odor to it," and a bitter taste, and peppermint oil has a "much larger menthol count compared with cornmint oil, and a much lower menthone."

It may also be said to have been established by the evidence, and not controverted, that the uses of the oils represented by exhibits 2

and 3 are different. The principal use of cornmint oil, apparently including the dementholized cornmint oil, exhibit 2, was stated to be the production of menthol, while the main use of peppermint oil, exhibit 3, was stated to be as a flavoring agent in candies, confectionery, liqueurs, etc.

An examination into the common meaning of the term "peppermint oil," as treated by lexicographers, reveals that *Mentha piperita* is generally given as the source. Thus, Funk & Wagnalls New Standard Dictionary, 1942, gives the following definition under "peppermint":

**1.** A pungent aromatic European herb (*Mentha piperita*), naturalized in the United States, used in medicine and confectionery * * *. **2.** An oil or other preparation from peppermint.

The New Century Dictionary, 1946:

**peppermint** * * *. A menthaceous herb, *Mentha piperita*, cultivated for its aromatic pungent oil; this oil, or some preparation of it; * * *.

Webster's New International Dictionary, 2d Ed., 1945:

**peppermint** * * * **1.** A pungent and aromatic mint (*Mentha piperita*) with dark-green lanceolate leaves and whorls of small pink flowers in spikes. **2.** The volatile oil obtained by distilling the herb; * * *.

Under the table of oils in the same dictionary, the source of "peppermint" oil is given as "Peppermint," and in the same table the source of "Japanese peppermint" oil is given as "Corn mint (*Mentha arvensis*)," indicating that the term "peppermint oil," modified by a proper adjective, is applied to cornmint oil or the oil derived from *Mentha arvensis*.

The article in the Encyclopaedia Britannica, 1947, Vol. 17, p. 498, under the heading "peppermint," seems to carry this connection a little further. The pertinent portion of the first paragraph of the article reads as follows:

Peppermint, an indigenous perennial herb of the family Labiatae, and genus *Mentha* (*see* MINT), the specific name being *Mentha piperita*, is distinguished from other species of the genus by its stalked leaves and oblong-obtuse spike-like heads of flowers. It is met with, near streams and in wet places, in several parts of England and on the European continent, where—as also in the United States—it is cultivated for the sake of its essential oil. * * *

This would seem to indicate that the source of peppermint oil is *Mentha piperita*. However, further on in the article the following appears:

Peppermint oil is largely distilled at Canton, a considerable quantity being sent to Bombay, also a large quantity of menthol. The species cultivated in the neighbourhood of Canton, is *Mentha arvensis*, var. *glabrata*. In Japan also the distillation of oil of peppermint forms a considerable industry, the plant cultivated being *M. arvensis*, var. *piperascens*. * * *

This latter would indicate that the oil derived from *Mentha arvensis* is also considered to be peppermint oil. This appears to be the view

of numerous chemical and technical authorities cited during the trial and in the briefs. Thorpe's Dictionary of Applied Chemistry, 4th Ed., Vol. VIII, at p. 660, contains the following under the heading "Oils of Peppermint":

There are two general types of Oil of Peppermint produced from the fresh flowering tips of (1) *Mentha piperita* mainly in the U. S. A., and (2) *Mentha arvensis* mainly in Japan, China, and Formosa.

E. J. Parry, The Chemistry of Essential Oils and Artificial Perfumes, 4th Ed., 1921, contains the following at p. 211:

### PEPPERMINT OIL.

Peppermint oil is produced in numerous countries, the principal supplies of the world being derived from the United States and Japan.  *  *  *

At p. 212:

The oil distilled in America and Europe is derived from varieties of *Mentha piperita*, chiefly *Mentha piperita*, var. *vulgaris* or "black mint," and *Mentha piperita*, var. *officinalis* or "white mint". The former is the hardier plant and yields the greater quantity of oil, whilst the latter yields less oil, but of more delicate odour and flavour. The parent plant of Japanese peppermint is *Mentha arvensis*, var. *piperascens* Holmes, or *Mentha canadensis*, var. *piperascens* Briquet, which yields an oil much inferior to that of *Mentha piperita*.

To like effect are the statements found in Gildemeister and Hoffmann, The Volatile Oils, 3rd Ed., Vol. III, pp. 503 *et seq.*

The plaintiff offered testimonial evidence with respect to the understanding of the term "peppermint oil" in the trade and commerce of the United States which deals in such commodity indicating that peppermint oil is understood to be the oil distilled from the plant *Mentha piperita* while cornmint oil is the oil distilled from the plant *Mentha arvensis*; that a delivery of cornmint oil would not be a good delivery on an order for peppermint oil; and that the prices of the two oils differed widely. It was stated, however, that cornmint oil, at least prior to 1939, was also known as Japanese peppermint oil and that in order to distinguish peppermint oil derived from *Mentha piperita* from the oil derived from *Mentha arvensis* a proper adjective denoting the country of origin was always appended in the trade.

On behalf of the defendant there was offered testimonial and documentary evidence of specific sales as well as trade offerings of Brazilian dementholated oil under the name "peppermint oil."

In the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives at the time the bill which ultimately became the Tariff Act of 1930 was under consideration, we find the following pertinent material at pp. 295 *et seq.*:

### PEPPERMINT OIL

**Description and uses.**—Oil of peppermint is a volatile oil distilled from the leaves and flowering tops of the peppermint herb. It is a popular flavoring agent

and finds an extensive use in chewing gum, confectionery, and pharmaceutical preparations. Japanese mint oil is used for making menthol. Domestic peppermint oil is not used for menthol manufacture.

**Production.**—* * *

\* \* \* \* \* \* \*

The Department of Agriculture reports that domestic oil of peppermint is produced entirely from cultivated plants of *Mentha piperita* and in normal years amounts to about 350,000 to 400,000 pounds.

Peppermint oil is produced in many countries, including the United States, England, Germany, France, and Japan. * * *

\* \* \* \* \* \* \*

**Competitive conditions.**—* * * American and foreign peppermint oils differ in flavor and characteristics and this leads to a demand for imported peppermint oil and results in an export demand for the American product.

A portion of the imported peppermint oil is used for making menthol. * * *.

In our view the foregoing strongly indicates that at the time Congress had before it for consideration the tariff provision for peppermint oil it was advised by the aforementioned official publication that the Japanese variety of the oil was embraced within the scope of the term "peppermint oil."

We think a fair summation of the situation is that there are two separate and distinct oils of commerce, having different physical and chemical characteristics, uses, and prices, both the oil derived from *Mentha piperita* and the oil derived from *Mentha arvensis* being known and recognized commonly and scientifically as peppermint oil. We are satisfied that in the trade and commerce of the United States both varieties of oil bear the name peppermint oil (although the oil derived from *Mentha arvensis* is also known as cornmint oil), and that in order to determine which is meant, some modifying or qualifying words are used, either the adjective form of the name of the country of origin or the botanical source.

Since the tariff designation in issue is "Oils, distilled or essential: * * * peppermint * * *," without any words of modification or qualification, we conclude that it embraces both varieties of peppermint oil, from which it follows that the oil here in question was correctly assessed with duty by the collector.

Before leaving the subject, we deem it proper to note that it has been brought to our attention that under the food and drug laws of the United States, and particularly the Federal Food, Drug, and Cosmetic Act, Ch. V., Secs. 501 (b) and 502, 52 Stat. 1049/50, 21 U. S. C. § 351 (b) and § 352, and Ch. VIII, Sec. 801 (a) and (b), 52 Stat. 1058, 21 U. S. C. § 381 (a) and (b), and the regulations issued thereunder, found in 21 C. F. R. § 1.309 to § 1.312, inclusive, cornmint oil or Brazilian or Japanese peppermint oil such as that here involved cannot be labeled in the United States as peppermint oil since peppermint oil as recognized in the United States Pharmacopoeia is only the

oil derived from *Mentha piperita.* Our attention has likewise been directed to the cases of *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434; *Wedemeyer* v. *United States*, 7 Cust. Ct. 141, C. D. 556; *Cramer & Co.* v. *United States*, 60 Treas. Dec. 874, T. D. 45270; and *Command-Aire (Inc.)* v. *United States*, 58 Treas. Dec. 325, T. D. 44278, in each of which cases the question at issue was whether certain articles such as lamps, horns, tachometers, and fire extinguishers were parts of automobiles, bicycles, or airplanes, and it was held that the fact that such vehicles were required by law to be equipped with the said articles tended strongly to establish that they were parts of such vehicles.

The fact that merchandise does not comply with the food and drug laws of the United States does not necessarily affect its classification for tariff purposes. Thus, in *Merck & Co.* v. *United States*, 24 Treas. Dec. 824, T. D. 33463, it was held by this court that certain coffee which was found not to comply with the pure food laws nevertheless was coffee for tariff purposes, the court saying:

The underlying governmental purpose of the food and drugs act is entirely different from that of the customs tariff. It might be that the Secretary of Agriculture would reach the conclusion that extracting the caffein from the coffee was in a measure, at least, adulterating it; that is, reducing its strength, and therefore it could not properly be sold as coffee. The adulteration of an article, unless it constitutes a refining or manufacturing of a raw material, does not change its classification for tariff purposes. Many commodities as they are imported come in in various grades and degrees of purity, and yet if they are specifically provided for in the tariff law, and there is no qualifying provision with reference to grade or degree of purity, they are all alike classified under that specific provision. * * *.

While there is no question of adulteration in connection with the peppermint oil here involved, we think the reasoning of the *Merck* case, *supra*, is applicable to the situation at bar.

The protest claim is therefore overruled, and judgment will issue accordingly.