(C.D. 2149)

J OHN  H. F AUNCE  P HILA ., I NC.  *v.* U NITED  S TATES

United States Customs Court, Second Division

(Decided February 3, 1960)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

FORD, Judge: In this action, we are called upon to determine the proper dutiable status of certain merchandise consisting of an air preheater and parts thereof which includes fans and blowers and so-called tuyeres for a metallurgical blast furnace.

The collector of customs at the port of entry assessed duty on all of this merchandise, with the exception of the fans and blowers, at the rate of 22½ per centum ad valorem under the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides as follows:

Articles or wares not specially provided for, whether partly or wholly manufactured:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other (except slide fasteners and parts thereof)__ 22½% ad val.

The fans and blowers were assessed with duty at the rate of 17½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by said general agreement, *supra*, which provides as follows:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

Switches and switchgear &ast; &ast; &ast; fans; blowers; &ast; &ast; &ast;____ 17½% ad val.

It is the position of plaintiff that the entire metallurgical blast furnace is a machine and, consequently, the imported items should be held to be parts of said machine within the purview of paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, which rate of duty is 13¾ per centum ad valorem. It is alternatively claimed by plaintiff that said merchandise is properly dutiable under paragraph 353 of said act, as modified by said Torquay protocol, *supra*.

The pertinent provisions of the paragraphs claimed under are as follows:

Paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*:

Machines, finished or unfinished, not specially provided for:

| * | * | * | * | * | * | * |

    Other * * *_____ 13¾% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

| * | * | * | * | * | * | * |

    Other _____ The rate for the article of which they are parts

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra*:

Articles having as an essential feature an electrical element or device, * * * wholly or in chief value of metal, and not specially provided for:

| * | * | * | * | * | * | * |

    Other * * *_____ 13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this part * * *_____ The same rate of duty as the articles of which they are parts

It is further alternatively claimed by plaintiff that, although the fans and blowers are essential for the operation of the metallurgical blast furnace, the electric motors utilized in operating said items are not essential. Since the appraisement of this merchandise was on the basis of the motors and fans being entireties, it is contended that the appraisement is invalid and void and the case should be remanded to a single judge to determine the proper dutiable value of each item.

The record in the case at bar consists of the testimony of Elvin L. Krieble, assistant director of research of the Phoenix Iron & Steel Co. and the Central Iron & Steel Co., the ultimate consignee of the merchandise covered by the above suits, as well as five exhibits which were received in evidence.

Mr. Krieble testified that his duties as assistant director of research were to improve processes and equipment and check on general conditions throughout the plant with respect to production and that the business of his employer is the manufacture of steel plate using basic open-hearth furnaces and rolling mills. The witness is a graduate chemical engineer and is a registered engineer in the State of Pennsylvania.

The merchandise covered by the invoices before the court was familiar to the witness as he was assigned to the project before the construction of the metallurgical blast cupola and subsequently followed the operation of the unit for approximately 2 years for the research and development department. A schematic arrangement

showing the general operation of the system was received in evidence as plaintiff's exhibit 1. Mr. Krieble marked the preheater unit illustrated on exhibit 1 with "A" and the tuyeres "B." An isometric drawing showing the arrangement of the cupola system, which is not to scale, was received in evidence as exhibit 2. The witness then marked the air preheater on exhibit 2 with the letter "A" and the tuyeres with the letter "B." A photograph of the lower section of the cupola proper, which is not the imported merchandise except for the tuyeres, was received in evidence as exhibit 3. The tuyeres on exhibit 3 were marked with the letter "B." An additional photograph depicting approximately the same illustration as contained in exhibit 3 was received in evidence as exhibit 4.

Mr. Krieble testified that an air-atomizing fan for the oil burner and a fan for the shot-blast cleaning system are not depicted on any of the exhibits received in evidence; that the imported merchandise contains mechanical features in that the fans are driven by electric motors and the entire system is remotely controlled by a pneumatic system; that the function of the unit is to produce hot metal from scrap which is sent to an open-hearth furnace and converted into steel; that the top of the cupola contains a pneumatically operated lid which is opened to introduce by means of a crane, a charge consisting of steel scrap, case iron scrap, coke, and limestone; that the cupola consists of a steel shell which is water cooled on the outside and lined with refractory materials, such as firebrick and carbon, and, when operated, is filled with this charge which descends as the material melts; that the heat for assisting the melting is produced by preheating air which is blown by a blower, designated as No. 10 on exhibit 1, into a section near the bottom of the cupola through 12 tuyeres; that the preheated air blasting into the charge near the bottom causes combustion of the coke producing sufficient heat to melt the metallic charge in the cupola which flows from a tap hole near the bottom of the cupola and collects as a pool; that, on top of the metallic charge, there is a layer of slag; that the gas which is formed from this combustion contains approximately 25 per centum carbon monoxide which passes through a duct, designated as No. 4 on exhibit 1, into a manifold in which a portion of the gas is introduced into the preheater combustion chamber through one of three burners, which are combination oil and gas burners; that the combustion air for these burners is fresh air introduced by means of the fan designated as No. 8 on exhibit 1, while another fan not shown on exhibit 1 furnishes fresh air for atomizing air when the burners are operating with oil as a fuel; that a heat exchange section designated as No. 7 on exhibit 1 consists of three banks of tubes, each bank containing 70 tubes; that the combustion gases from section No. 6 pass over the outside of the tubes, leaving the heat exchanger

through an exhaust fan, designated as No. 9 on exhibit 1, while blower 10 on exhibit 1 takes fresh air and delivers it through the heat exchange section No. 7 by passing the air inside the tubes; that air leaves the heat exchanger section at a temperature of between 900 to 1,000 degrees Fahrenheit; and that this air is then introduced to the cupola through the 12 tuyeres, marked "B" on exhibit 1.

The witness further testified that the control panel operates certain pneumatic valves, designated V–1 to V–13 on exhibit 2, which include the pneumatically operated lid, marked No. 2 on exhibit 1; that the pneumatic valves are essential and necessary to the operation of this apparatus which cannot be efficiently or properly operated without them; that, after a period of operation, the heat exchange section becomes fouled with dust on the outside of the banks and tubes and a shot cleaning system was added, marked with the letter "C" on exhibit 2, whereby a quantity of alloyed steel shot is allowed to trickle down through the tubes and recycle to the top of the tubes; that the motivation for this shot recycle is furnished by a high velocity air blast generated by an electric blower; and that the air required for operating this system is necessary for the efficient operation of the heater and actually transmits motion from one place to another by rotating or sliding the valves.

Mr. Krieble then testified that the electrical features of the importation under consideration are the electric motors necessary to drive the fans. However, the witness indicated that the fans could be driven by any mode of power that would rotate a shaft at the proper speed. The fan itself, irrespective of the motivating power, is essential to the operation of the metallurgical blast furnace. In response to questions by the court, the witness testified that all the blowers which were imported with the preheater are an integral part of the preheater and that all fans, exhaust, primary, and other are necessary for the efficient operation of the unit.

In summation, the witness testified that, in addition to the compressed air and electricity, the force of gravity is utilized to move the stock or charge down through the cupola as it melts. The heat used to melt the steel scrap in the charge is assisted by the preheated air produced by the preheater. Mr. Krieble then testified that the various parts he has testified about were designed specifically to be used together as an entirety to make a preheater for use with a metallurgical blast cupola.

The first question presented to the court in this action is whether the imported merchandise is parts of a machine as claimed. Therefore, consideration must be given to determine whether the metallurgical blast furnace of which the imported articles are claimed to be parts is in fact a machine.

The definition of the term machine for tariff purposes has been considered by this court for many years. Our appellate court set forth the definition of and standards for a machine in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537. In that case, the court, following these standards, held a machine to be a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion. This formula has been applied by the courts since said decision. The evidence adduced herein establishes without contradiction that the blast furnace is a machine for tariff purposes and, if imported in its entirety, would be properly classified under the provisions of paragraph 372 of the Tariff Act of 1930, if not more specifically provided for in paragraph 353 of the Tariff Act of 1930.

Plaintiff herein also contends the imported merchandise is parts of an article having as an essential feature an electrical element or device and, as such, is properly dutiable under said provision at 13¾ per centum ad valorem in paragraph 353 of the Tariff Act of 1930, as modified, *supra*. The unrebutted evidence establishes that the metallurgical blast furnace could not function effectively without the use of the electrical elements or devices which are essential. Accordingly, we are of the opinion that the metallurgical blast furnace is an article having as an essential feature an electrical element or device and would be properly dutiable under said paragraph 353 if imported as an entirety.

Additional testimony was adduced with respect to the further claim of plaintiff that the motors are separately dutiable, since, although the fans and blowers are essential, they could be operated by any means which would rotate the shaft at the proper speed. This type of evidence does not satisfy the court that the motors, fans, and blowers are not entireties. The record does not establish what would be required to change the method of motivation. *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. (Customs) 51, T.D. 47050; *Ralph C. Coxhead Corp.* v. *United States*, 22 C.C.P.A. (Customs) 96, T.D. 47080. Unless satisfactory evidence is adduced which would indicate that no material change or alteration would be required to utilize other power for motivation than electricity, the court may not assume a state of facts which does not exist. The claim of separability of the motors from the fans and blowers is overruled.

In view of the foregoing, the next principle to be considered is whether the imported articles are parts of said articles or devices. A part of an article is something necessary to the completion of that article and is an integral, constituent, or component part without which the article to which it is to be joined could not function as such article. *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust.

Appls. 285, T.D. 42872; *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434; *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851; *United States* v. *The J. D. Richardson Company*, 36 C.C.P.A. (Customs) 15, C.A.D. 390.

The record herein amply establishes that the imported articles are integral constituents or component parts without which the metallurgical blast furnaces could not function as such. Accordingly, we are of opinion that the components of the preheater and the tuyeres tubes under consideration are parts of an electrical machine and, consequently, are properly dutiable at 13¾ per centum ad valorem, as such, under the provisions of paragraph 353 of the Tariff Act of 1930, as modified, *supra*.

To the extent indicated, the specified claim in the above suits is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.