DURBROW & HEARNE MANUFACTURING Co. *v.* UNITED STATES (No. 1950).[1]

1. CONSTRUCTION, PARAGRAPH 441, TARIFF ACT OF 1913—AIDED BY CONTEXT—PARTS OF SEWING MACHINES.

From the fact that the tariff act of 1913 makes no provision for parts of embroidery machines, it is concluded that the provision of paragraph 441 for parts of sewing machines should cover such parts no matter whether or how much they might be used on embroidery machines.

[1] T. D. 38001 (36 Treas. Dec., 400).

2. SEWING-MACHINE SHUTTLES.

   Sewing-machine shuttles are classifiable as parts of sewing machines (par. 441, tariff act of 1913) rather than as manufactures of metal (par. 167), even though they be imported for use in embroidery machines.

United States Court of Customs Appeals, April 18, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42678.

[Reversed.]

*B. A. Levett* for appellant.

*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

[Oral argument Mar. 26, 1919, by Mr. Levett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Steel shuttles imported at the port of New York were classified by the collector of customs as manufactures of metal and assessed for duty at 20 per cent ad valorem under that part of paragraph 167 of the act of 1913 which reads as follows:

167. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, * * * or other metal, * * * whether partly or wholly manufactured, 20 per centum ad valorem.

The importers protested that the goods were parts of sewing machines and that they were free of duty inasmuch as they were enumerated in paragraph 441 of the free list of the act of October 3, 1913, which paragraph in so far as pertinent reads as follows:

441. Cash registers, * * * sewing machines, * * * all the foregoing whether imported in whole or in parts, including repair parts.

The Board of General Appraisers overruled the protest and the importer, appealed.

The Government contends that the shuttles are chiefly used as parts of embroidery machines and that as parts of embroidery machines are not specifically enumerated the shuttles were properly classified by the collector as articles or wares of metal not specially provided for.

The importers admit that the shuttles are chiefly used in this country in embroidery machines, but contend that they are within the intention of paragraph 441 of the free list, inasmuch as long prior to their use in embroidery machines they constituted and still constitute an essential part of certain kinds of sewing machines.

It appears that the shuttle is a mechanical device designed to carry a thread through a loop formed by the needle thread for the purpose of making what is known as a lock stitch; that is to say, a stitch which will not pull out. The record shows that thousands of varieties of shuttles are required for sewing machines of different sizes and types and that the manufacture of shuttles is a separate industry which has

for its objective the production of shuttles for the manufacturer as well as the user of sewing and embroidery machines. According to the testimony the first sewing machine did not embroider and the first embroidery machine did not use a shuttle and consequently did not make a lock stitch. In time, however, the usefulness of the shuttle for embroidery purposes came to be recognized and so there was added to the embroidery machine the sewing-machine shuttle.

Experience and the genius of inventors has brought about the manufacture of many types of shuttles, but none of the types has any purpose other than that of creating a lock stitch, and whatever of difference there is between types is apparently occasioned by the various sizes of sewing machines or some special tension requirement. We assume, however, that the shuttle in controversy is not a new type of shuttle, inasmuch as the witness Hearne testifies that it is the shuttle which was devised for the original Singer sewing machine and that it has been in use on sewing machines of one kind or another for at least 60 years.

Any sewing-machine shuttle may be used in an embroidery machine provided the races of the embroidery machine are of the right size. Indeed, as we read the testimony there is no special embroidery-machine shuttle; that is to say, there is no shuttle which is especially made for embroidery machines and not for sewing machines. In other words the manufacturer and the user of embroidery machines buy one day a type of shuttle from the shuttle manufacturer which may be sold the very next day to the manufacturer or user of certain kinds of sewing machines.

We conclude from the evidence—

(1) That the article which is the subject of protest was originally and still is a sewing-machine shuttle which is actually used in this country on sewing machines and particularly on sewing machines which are required to do quilting.

(2) That no shuttle has ever been specially made or manufactured for embroidery machines and that such machines avail themselves of a shuttle originally designed and still manufactured, bought, and sold for sewing machines.

(3) That the importation is no part of an embroidery machine, but an essential sewing-machine part which is used wholly without modification or change on an embroidery machine exactly as it is used on certain classes of sewing machines. The evidence establishes that the embroidery machine is nothing more than a special type of sewing machine and Congress, knowing that fact, must have known that certain parts of sewing machines would of necessity be required in embroidery machines. Having that knowledge, Congress laid a duty on embroidery machines and not only did not provide by name in the duty paragraphs for parts of embroidery machines, but expressly

exempted from duty parts and repair parts of sewing machines. From the omission to provide for parts of embroidery machines and the express exemption of parts and repair parts of sewing machines, we think that under the circumstances it is fair to conclude that Congress intended that parts of sewing machines should be admitted free of duty and that their use whether small or great on embroidery machines should not deprive them of that favor.

The decision of the Board of General Appraisers is *reversed*.