The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v*. MITCHELL CAMERA CORP. (No. 3820)[1]

United States Court of Customs and Patent Appeals, February 25, 1935

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *William H. Futrell*, special attorneys, of counsel), for the United States.

No appearance for appellee.

[1] T. D. 47553.

[Oral argument December 11, 1934, by Mr. Folks; submitted on record by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:.

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of so-called finder lenses, some imported under the Tariff Act of 1922, the other under the Tariff Act of 1930, was assessed for duty by the collector at the port of Los Angeles, Calif., as "photographic lenses," at 45 per centum ad valorem under paragraphs 228 and 228 (b) of the Tariff Acts of 1922 and 1930, respectively.

The importer protested, claiming that the imported merchandise was not dutiable as "photographic lenses", but that it was properly dutiable as parts of cameras at 20 per centum ad valorem under paragraphs 1453 and 1551 of the respective tariff acts.

Alternative claims were made in the protests, but in view of the fact that counsel for the importer stated to the trial court that the merchandise was dutiable as parts of photographic cameras, and as no other claims were urged by counsel for the importer, the trial court disposed of the case upon the theory that the sole issue presented was whether the merchandise was dutiable as "photographic lenses", as assessed by the collector, or as parts of cameras, as claimed by the importer.

The competing paragraphs, so far as pertinent, read as follows:

*Tariff Act of 1922:*

Par. 228. * * * photographic and projection lenses, * * * and other optical instruments, and frames and mountings for the same; all the foregoing not specially provided for, 45 per centum ad valorem.

PAR. 1453. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem * * *.

*Tariff Act of 1930:*

PAR. 228 (b) * * * photographic or projection lenses, * * * all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

PAR. 1551. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem: *Provided*, That if the photographic lens is the component in chief value of the camera or of the part in which it is imported, such camera or part, including the photographic lens, shall be dutiable at the rate applicable to such photographic lens when imported separately * * *.

Exhibits I and II were introduced on the trial below as being representative of the imported merchandise. They were described in the decision of the trial court as follows:

An examination of exhibit 1 indicates it is far from being "a plain piece of glass." It is a rectangular piece of heavy glass which appears to have been cut from a

convexo-concave lens, being convex on one side and slightly concave on the other. This article is a trifle over 3½ inches in length by a little under 2 inches in width. It is about half an inch thick at its greatest thickness, tapering to about three-sixteenths inch in thickness at the ends. All 4 edges are ground, and the front and back of the article are polished.

Exhibit 2 is very similar, but is composed of a smaller and thinner piece of glass than exhibit 1. It is flat, instead of being concave on one side. This side appears to have been ground. The 4 edges are also ground. The convex side is polished.

The importer called but one witness, G. A. Mitchell, a mechanical engineer in its employ. He testified that the importer was engaged in the manufacture of motion-picture equipment, and accessories for motion-picture cameras; that Exhibits I and II were parts of an article known as a "finder"; that a "finder" is a "complete instrument." When asked how a "finder" is used in connection with a motion-picture camera, the witness said:

—A. Well, it doesn't seem to be used in connection with the camera. For instance, if a director is going out looking for locations, he would take this along, this finder itself, illustrative exhibit A. He would take that along to look through that, and that delineates his field, and he could pick out his composition from that. Afterwards this is placed on the side of the camera, this same exhibit A is placed on the side of the camera, and the cameraman looks through that while taking the picture, so he knows the field of view.

Q. In your experience, how often have you seen these finders used in connection with motion picture cameras?—A. Oh, many hundreds of times.

Q. Would you say that they are universally used in connection with motion picture cameras?—A. Well, every motion picture camera has a finder of some sort, whether it is our make or not, they have some sort of a finder.

Q. And this particular finder is your make of finder for use in a motion picture camera?—A. Yes.

On redirect examination, he said:

R Q. Have you ever seen a camera without some sort of a finder lens attached to it?—A. Yes.

R Q. Is that common or is that unusual?—A. Well, they are all detachable, so you can see it any time without finders. They are commonly used with some sort of a finder.

R Q. In use, I am referring to. Have you ever seen any in use without some kind of a finder?—A. Yes.

R Q. Often, or is it uncommon?—A. No, it is uncommon when they are used that way.

R Q. *Would you state that although a picture could be taken without a finder lens, yet a finder lens is essential for the proper taking of a picture?*—A. *It is not essential, no. It is a great convenience.*

R Q. *It is as essential as the tripod?*—A. *No.*

R Q. It is not as essential as the tripod?—A. No.

R Q. What do they use as a substitute to a finder lens, I mean, when the finder lens is not used?—A. They usually line up across the corners of the camera, have some sighting marks on the camera and use it that way.

R Q. Is that a common practice?—A. No, it is not.

R Q. That is an unusual practice?—A. Yes.

R Q So that the usual practice is to use a finder lens in connection with the camera, is that right?—A. Yes. (Italics ours.)

He further testified that the lenses, of which Exhibit I is representative, were magnifying lenses and magnified the image. When asked whether Exhibit I was used to magnify the image in a *motion-picture camera*, the witness said: "No. This is an accessory which is merely a viewing device." With regard to the merchandise represented by Exhibit II, he said that it was "the image-receiving surface in the same instrument—[the finder]." He then stated that the lenses, represented by Exhibit I, were not photographic lenses, because they were not corrected for "chromatic aberration"; that they were known as "meniscus" lenses; and that those represented by Exhibit II were "plano-convex" lenses, and were not, and could not be, used as photographic lenses.

The trial court held that the lenses represented by Exhibit I were photographic lenses, and properly classified as such by the collector; that those represented by Exhibit II were not photographic lenses; that they were parts of photographic cameras, and dutiable as such. Judgment was entered accordingly.

The Government appealed from that part of the judgment holding that the merchandise represented by Exhibit II was dutiable as parts of cameras.

It may be said at the outset that the burden was upon the importer on the trial below to establish not only that the collector's classification was wrong, but that its claim that the merchandise here involved, of which Exhibit II is representative, was dutiable as parts of photographic cameras was right.

It clearly appears from the record that the involved merchandise is a part of a so-called "finder"; that a "finder" is a "complete instrument"; that it is not, according to the witness, "essential for the proper taking of a picture", but "is a great convenience"; that it is not as essential in the taking of a picture as is a tripod. Accordingly, if any consideration is to be given to the testimony of the only witness in the case, "finders", of which the involved merchandise is a part, are not integral, constituent, or component parts of photographic cameras, but are mere accessories which are of great convenience in the use of motion-picture cameras. Obviously, then, a mere part of a "finder" is not a part of a photographic camera.

This conclusion is in accord with our decision in the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, where it was held that, although it was necessary to use tripods as supports for "view cameras, copying cameras, [and] photo-engraving cameras", they were not "for that reason, integral, constituent, or component parts of such cameras. The most that can be said is that the two articles—a tripod and a camera—are

designed to be used together, one as a support for the other, and that they are chiefly so used." The court further stated that—

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* *Welte & Sons* v. *United States,* 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.,* 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States,* 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker,* 16 Ct. Cust. Appls. 548, T. D. 43266.

The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. *Columbia Shipping Co. et al.* v. *United States,* 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kalter Mercantile Co. et al.,* 11 Ct. Cust. Appls. 540, T. D. 39680.

It may be that the involved lenses are parts of photographic cameras. However, the evidence of record, upon which this case must be decided, does not warrant such a finding. We must hold, therefore, that the conclusion reached by the trial court is contrary to the evidence, and should be reversed. In so holding, we do not wish to be understood as expressing any opinion as to the proper dutiable classification of merchandise like that here involved.

For the reasons stated, the judgment of the trial court, holding the involved lenses dutiable as parts of cameras, is *reversed.*

### DISSENTING OPINION

Bland, Judge: I think that the judgment of the trial court should be affirmed. We are wholly unjustified in permitting the conclusion of a witness, even though he be an interested one, to cause us to make a holding contrary to other conceded and admitted facts and evidence in the case which should be controlling.

The majority has italicized the witness's statement that the finder lens is not essential and that it is not as essential as a tripod. Even if it be thought necessary to bring the facts of this case within the facts of some of the cited camera and tripod cases by reason of the use of the word "essential", the determination of that question should not be controlled by the opinion of a witness after he has fully explained the nature, construction, and use of the article.

Moreover, the article itself is before us, and all of its characteristics are thoroughly understood by the court. The witness stated that the finders involved were sometimes used to pick out a location without being on a camera. But, it is shown that when the camera is used for taking pictures, the finder is returned and placed upon the camera. The witness also stated that every motion-picture camera has a finder of some sort, regardless of whether or not it was the kind of finder which is at bar. He was then asked about *a camera,* and was asked if he had ever seen one used without a finder lens attached to it. He said he had, but that it was unusual. He was asked how

they would use a camera without a finder lens. He replied that they would "line up across the corners of the camera."

I think the witness was probably speaking of cameras generally, since it is hard to understand how in taking a picture with a motion picture camera, it is possible to "line up across the corners." But, even if it were true that one could make some kind of picture with a motion-picture camera by *lining up across the corners*, and without a finder lens, surely that is no reason for holding that a finder lens is not a part of a motion-picture camera.

Of course, if the word "essential", found in some of the cases cited, is to be given one of its meanings—"indispensable"—it may be that the finder at bar is not an essential part of a camera. To so conclude, however, in my judgment, would be an error which would lead to consequences of the gravest character.

The following cases, in my judgment, support the conclusion that upon this record the articles at bar are parts of cameras: *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434 (automobile horns and lamps); *Dubrow & Hearne Mfg. Co.* v. *United States*, 9 Ct. Cust. Appls. 177, T. D. 38001 (shuttles for sewing machines); *Decorated Metal Mfg. Co., Inc.* v. *United States*, 12 Ct. Cust. Appls. 140, T. D. 40061 (typewriter ribbon spools); *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872 (endless felt drier belts used in making tissue paper); *United States* v. *G. W. Sheldon & Co.*, 21 C. C. P. A. (Customs) 392, T. D. 46913 (pressure valves in ammonia-producing machines); *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673 (glass screens for photolithographic cameras).

I do not think there is anything in *United States* v. *C. Gennert, Inc.*, 18 C. C. P. A. (Customs) 453, T. D. 44701, or *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, which justifies any conclusion to the contrary, but if there is, the sooner it is explained or overruled the better for all concerned.

The Government has not contended in this case that the parts of the finder lenses which are at bar are not parts of cameras. On the contrary, it relies on its contention that they are more specifically provided for elsewhere. The collector did not find that they were not parts of cameras. He found that they were parts of cameras, to wit, photographic lenses. The Government could not consistently contend that they were photographic lenses and, at the same time, argue that they were not parts of cameras, and it has not done so. The same is true of the collector. Therefore, it is my view that, at most, the importer rested under no very heavy burden in showing that the imported merchandise was parts of cameras—it was and is admitted.

The mere fact that the motion-picture camera would operate to take a picture of some kind without the use of any kind of finder does

not negative the conclusion that the finder is in fact a part of a camera, nor does it suggest that the finder is a mere accessory. A thing may be an essential and integral part of a machine, notwithstanding the fact that the machine might operate with some degree of satisfaction without the part. We have before us the undisputed fact that every motion-picture camera has a finder of some sort, and that it is used in taking motion pictures when the camera is used. That this fact is true is abundantly supported by the following, found in the Encyclopaedia Britannica, Volume 15, pages 867 and 868:

> The cameras actually used in the motion picture studios are beautiful pieces of engineering work, costing several thousands of dollars, and are distinctly heavy and complicated. They are supplied with several finders, by which the scene can be viewed or focused on the film.  *  *  *

The witness's description of how this finder is used and how motion-picture cameras are used is convincing that the finder at bar is essential, or at least some kind of finder is essential to the proper and efficient work of a motion-picture camera. It seems to me that to operate such a camera without a finder would be wholly impracticable and would not produce such results as would meet the requirements of the motion-picture industry. I think that a complete motion-picture camera with a finder (if the lens were not of chief value) was one of the kinds of cameras Congress had in mind when it prepared the camera provisions (*United States* v. *American Steel & Copper Plate Co.*, *supra*), and it is my view that if the completed machine with a finder, of which the merchandise here is a part, were imported, it would necessarily be regarded as an entirety.

But, it may be suggested that "essential" means "indispensable", and that when this court used that term heretofore in certain cases, it employed it in such a sense. While "essential" ofttimes is used, and properly so, in the sense that it means "indispensable", I am certain that this court in none of the decided cases ever intended to hold that a thing would be regarded as a part of an article, only when the part was so indispensable to the use of the article that the article would not perform its normal functions without it. To so hold would unduly complicate the classification of certain machines and many other imported articles. There are many new improvements for old machines which add to their efficiency and completeness. Notwithstanding the fact that such a machine would function in its old way without the new attachments, it might not perform such functions in a satisfactory manner. Of course, there are many attachments for imported articles which are not parts of such articles, and which are mere accessories and cannot be regarded as essential to the use of such articles, irrespective of whether the term "essential' is used in a broad or narrow sense. Radios, cigar lighters and numerous other articles, although attached to automobiles, are so wholly

unrelated to the general use and purpose of the automobile that they can be regarded as nothing other than mere accessories, while the fact that horns, lights, windshield wipers, bumpers, starting mechanism, cushions and many other attachments and components so contribute to the efficiency, and utility of the automobile that, in my opinion, requires that they be regarded as necessary and essential parts of that kind of automobile and should be so regarded for tariff duty purposes. The fact that many automobiles do not have such parts, and that the machine would function if such parts were dispensed with, does not change the situation.

It might be noticed that in the *Bosch Magneto Co.* case, *supra*, no proof was required that a horn or an automobile lamp was an essential part of an automobile. The conclusion of a witness as to whether an automobile lamp was or was not essential to an automobile would surely not have changed the result there.

Let us suppose that a new, improved motion-picture camera with several finders is imported and that the finders are used when the machine functions normally (no doubt such cameras are imported). I take it that no one would seriously contend, certainly not logically, that the collector should strip the machine of the finders and other equally essential parts and hold that they were accessories and that what remained was the camera. If only those things which were indispensable to some kind of use of the camera constituted parts of the camera, there would not be much of the modern camera left when the collector had finished his duties.

In the light of the foregoing considerations, I respectfully submit that the United States Customs Court arrived at the correct conclusion in this case.