UNITED STATES (KORLIS LTD., PARTY IN INTEREST) *v.* THE WESTFIELD MANUFACTURING COMPANY (No. 5069 & 5072)*

---
*C.A.D. 803.

United States Court of Customs and Patent Appeals, May 18, 1962

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. Fitzgibbon*, Chief, Customs Section (*Alan S. Rosenthal* and *Kathryn H. Baldwin*, trial attorneys, of counsel) for the United States.

*Covington & Burling* (*Donald Hiss*, of counsel) for Party in Interest.

*Lamb & Lerch* (*John G. Lerch*, of counsel) for appellee.

[Oral argument November 14, 1961, by Miss Baldwin, Mr. Hiss and Mr. Lerch]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [1]

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, C.D. 2232, on a protest by appellee, an American manufacturer of bicycles, against the collector's assessment of duty on certain bicycles at the rate of 11¼ per centum ad valorem. The protest was brought pursuant to section 516(b) of the Tariff Act of 1930, as amended.

The assessment was made on the basis that the imported bicycles come within that provision of paragraph 371 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, supplemented by Presidential Proclamation 3108, 90 Treas. Dec. 285, T.D. 53883,[2] which reads as follows:

> Bicycles with or without tires, having wheels in diameter (measured to the outer circumference of the tire):
>
> Over 25 inches:
>
> If weighing less than 36 pounds complete without accessories and not designed for use with tires having a cross-sectional diameter exceeding 1⅝ inches_____ $1.87½ each, but not less than 11¼% nor more than 22½% ad val.

The same paragraph further provides that other bicycles with a wheel diameter over 25 inches, including those exceeding 36 pounds in weight, are dutiable at $3.75 each, but not less than 22½%, nor more than 30% ad valorem.

Appellee's protest is on the basis that the imported bicycle should be assessed at the rate of 22½% because it weighs over 36 pounds when weighed with the luggage carrier, kickstand, and lighting unit included therewith.

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

[2] In *United States* v. *Schmidt, Pritchard and Co., Mangano Cycles Co.*, 47 CCPA 152, C.A.D. 750, this court affirmed a judgment of the Customs Court holding the rate change effected by T.D. 53883 for bicycles of this class to be invalid. T.D. 55328 (1961) apparently supersedes T.D. 53883.

It is shown by the record that the United States Customs Examiner who passed the entry found the net weight of the imported bicycle, without the front carrier, kickstand and lighting unit, to be 33½ pounds while its net weight, including these items, exceeded 36 pounds. The examiner made no determination of the weights of the carrier, kickstand, and lighting unit individually.

The Customs Court ruled on the protest as follows:

* * *, we hold that lighting sets and kickstands are parts of bicycles, the weight of which must be taken into consideration in ascertaining their weight, "complete without accessories," within the purview of paragraph 371 of the Tariff Act of 1930 as modified, *supra*, and that luggage carriers are accessories to be excluded from that calculation. The claim of the plaintiff is sustained to the extent indicated. In all other respects and as to all other merchandise, all other claims are overruled.

Both the party in interest and the Government seek review of the Customs Court decision, contending that the kickstands and lighting sets should not be included in the weight of the bicycles. No appeal was taken by the appellee from the ruling, adverse to it, that the luggage carriers are accessories to be excluded from that weight. Thus, only the status of the kickstands and the lighting sets is in issue here.

Appellants urge that the principle applicable to determine whether an item is a part or an accessory of the parent article is as follows:

* * * when the item as applied in its intended purpose or ultimate use on the parent article is then essential to the operation of the parent article in the usual manner, the item is a part. If, conversely, when the item is applied in its ultimate use on the parent article, that parent article can still function in its usual manner without the item, the item is an accessory.

They contend that kickstands are accessories under the principle set forth because it is clear that they are used only when a bicycle is not being operated and that bicycles operate efficiently without them. According to appellants, evidence in the record that kickstands are listed in catalogs as accessories and some bicycles are sold without kickstands further indicate that such items are accessories.

In support of the contention that lighting sets are accessories, appellants refer to evidence that, in the United States, most bicycles are used by children who are not allowed to ride at night. They assert that, for that reason, these items are not essential to the usual functioning of a bicycle and the existence of state statutes requiring bicycles to be equipped with lighting sets when ridden at night are not relevant to the issue here.

The Government contends that the intention of the negotiators of the General Agreement on Tariffs and Trade (GATT), by which paragraph 371 was modified, was that lighting sets and kickstands be excluded in arriving at the net weight of bicycles for purposes of classification within that paragraph. In support of that contention, it

refers in its brief to items in the digest of data furnished the President and the negotiators of GATT. We have examined the cited items of the digest in the light of the Government's arguments and note that they indicate that children favor having their bicycles fitted with various accessories while adults prefer to have their bicycles as light as possible, and that they use the term "accessories" in connection with lamps. However, the fact that the information in these items was before the negotiators does not impress us as being of any substantial significance as an indication that the negotiators intended that lighting sets and kickstands should be excluded by the term "complete without accessories."

Obviously the resolution of the other issues presented here cannot be predicated only on the significance of the articles in contributing to the mere functioning of the device as a bicycle. If this were the only criterion many articles would be adjudged accessories whereas under previous decisions of this court, they should be considered parts. Recently, in *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758, we had occasion to review the law with reference to whether an item was a "part" of a device. The facts there involved the question of whether the imported brackets for mounting door closers were "parts." The conclusions drawn from the previous cases are pertinent to this discussion. We said:

> In all of these cases, as in the present case, there was an option on the part of the purchaser of the article to use it either with or without the imported auxiliary devices. When the purchaser elected to use the article with such auxiliary devices, the devices were held in each case to be parts of the article for which they were designed and intended for use. *In all these cases the articles could have been used without the imported auxiliary device. In these cases the court considered the function of the auxiliary part when the purchaser elected to use it as a part of the article and did not consider it determinative that the article could function without the auxiliary part.* [Emphasis added.]

It appears to us a more realistic criterion in the present situation would include several other factors, any one of which or all could be significant in determining the issues, such as the demand of the purchasing public for the items, their contribution to the safety and convenience of the rider in the reasonable and normal operation of a bicycle and the extent the items afford an unlimited use of a bicycle.

Insofar as the kickstands are concerned, the record shows that nearly all bicycles, except racing bicycles and bicycles with training wheels, are sold in this country with these items attached. Besides this factor, there are others which convince us that the kickstands are "parts" of bicycles. The opinion of the Customs Court adequately expresses our views in this connection and therefore we quote the portion thereof:

> Turning now to the question of the kickstands, we observe that we are confronted with a device which functions, not in the operation of the bicycle, but only when it is not in use. The record shows that a kickstand serves to keep

the bicycle erect and in place when it is not moving, to prevent it from being damaged. Obviously, then, the mobility of a bicycle is not impeded by the absence of a kickstand, nor is a kickstand necessary to make it go. But a bicycle is an unwieldy mechanism which can not stand of its own accord. It is a matter of common knowledge that without some form of parking device, when a bicycle is not in use, it must either be rested against an upright structure or left lying upon its side. The location of the former depends on chance; resort to the latter may occasion damage to the vehicle and inconvenience to both the rider and public. It would seem, therefore, that if a bicycle is to be operated properly, efficiently, and in its ordinary manner, it must be provided with a means for keeping it erect and free from damage. Kickstands are the devices which supply that need. We are, therefore, of the opinion that kickstands are so intimately connected with the use of bicycles as to be essential to their completeness, and properly to be considered, for tariff purposes, parts of bicycles.

Although the record reflects that the lamps and generators are not in great demand, they do provide the rider of a bicycle in darkness with a safety device which is not otherwise available. The use of the bicycle in the dark without some form of illumination would be dangerous and, in most states, illegal. Therefore, without an illuminating device, the bicycle is limited to daytime use. Of course, if the owner wanted only to ride the bicycle during bright daylight, illumination would be unnecessary but if he does wish to ride at night or during a dark foggy day, he cannot do so without illumination. This situation is much like that in the *Trans Atlantic* case. There, the door brackets were unnecessary if the door closers were to be installed in one position but if they were to be installed in another, the brackets were necessary. In other words, we held the brackets to be "parts" because without them the mounting of the door closers would be limited to one position.

The party in interest argues, as we previously noted, that since children between five and fourteen years of age are the chief users of bicycles in this country and they are not permitted to ride them after dark, the imported lamps are unnecessary equipment and therefore accessories. We do not agree with this contention. The significant factor is that these lamps and generators are capable of providing the necessary illumination for night bicycle riders and without illumination the bicycle cannot be ridden. Our conclusion in the *Trans Atlantic* case was not based upon how widely the imported brackets were used but upon the utility of the brackets when used.

We believe these lamps and generators provide the rider with limitless use of his bicycle as a bicycle insofar as day and night usage is concerned and, therefore, must be considered "parts" of a bicycle.

On the basis of this record and for the above reasons we *affirm* the judgment of the Customs Court.

Rich, Judge, dissenting.

The modified language of GATT here involved is: "Bicycles * * * complete without accessories," which means, of course, without bicycle

"accessories." (Paragraph 371, as modified.) The collector's problem is how much a *bicycle* weighs.

It has been settled in this very protest proceeding that a chromium plated front luggage carrier is a bicycle "accessory" within the meaning of this clause, and not to be weighed in determining the weight of the bicycle. The reasoning of the Customs Court in so holding (no appeal having been taken from this holding) was:

* * * they serve no purpose in the operation of a bicycle and * * * bicycles can, and do, function safely and efficiently without them, in the manner for which they are normally designed. Luggage carriers are *clearly* items enhancing the attractiveness, and, perhaps even the convenience of a bicycle, but having no effect upon its performance. Since a bicycle is complete in every respect without the attachment of a luggage carrier, the latter is *obviously* no more than an accessory, * * *. [Emphasis added.]

This is sound reasoning, but the court completely abandoned it when it came to consider the other two items. They are a kickstand and a "3 pcs. chrome lighting unit."

What is or is not a *bicycle* accessory depends on conditions in the bicycle trade as of the time of the importation. *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602. It is not a static thing. As in other fields, such as the automotive field, what is an accessory in one period may become standard equipment at a later time. Therefore we must look to what the record discloses.

The reasoning of the court below, and of the majority here, rests, for the most part, on prior cases which were concerned, not with the issue before us, but with the question of whether various imports, viz., brackets for door checks,[1] superchargers for Ford and Austin auto engines,[2] tripods for cameras,[3] camera view finders,[4] automobile lamps and horns,[5] player piano music rolls,[6] steel sewing machine shuttles,[7] halftone screens for reproduction cameras,[8] pistol magazines,[9] felts for paper-making machines,[10] optical range finders for use with cameras,[11] and figurines for use on dancing-girl music boxes,[12] were *dutiable* as *parts of* the articles with which they were to be used. In not one of these cases [13] was there an issue to whether the imports

---

[1] *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758.

[2] *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602.

[3] *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851.

[4] *United States* v. *Carl Zeiss, Inc.*, 24 CCPA 145, T.D. 48624.

[5] *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434.

[6] *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T.D. 34249.

[7] *Durbrow & Hearne Manufacturing Co.* v. *United States*, 9 Ct. Cust. Appls. 177, T.D. 38001.

[8] *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673.

[9] *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T.D. 42472.

[10] *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T.D. 42872.

[11] *United States* v. *E. Leitz, Inc.*, 26 CCPA 418, C.A.D. 49.

[12] *United States* v. *Cody Manufacturing Co., Inc.*, 44 CCPA 67, C.A.D. 639.

[13] For completeness, all of the cases cited in the *Trans Atlantic* case, cited by the majority, are included because they seem to be relied on and I wish to make this point strongly. Also included are all of the appellate court cases mentioned in the opinion below insofar as they deal with this same point.

were "accessories" under any provision of the tariff act. In each case the issue was whether they were classifiable *for duty* as "parts" of something or were subject to some alternative classification. In the order above named, the alternative classifications were: articles n.s.p.f. of iron or steel,[1] machines n.s.p.f.,[2] manufactures of wood,[3] optical instruments,[4] manufactures of metal n.s.p.f.,[5] music in sheets or manufactures of wood or paper,[6] manufactures of metal,[7] articles n.s.p.f. of glass,[8] manufactures of metal,[9] woven fabrics,[10] optical instruments,[11] and dolls.[12]

The imports in some of the above cases were held to be "parts" rather than the alternative and others were not. To attempt to follow any of these cases in pursuit of the answer to the question, "What is a bicycle accessory?", is, in my judgment, to follow a red herring for the simple reason that, under the logic of at least some of these cases, what is obviously a bicycle accessory for the purpose of finding out what the bicycle, "without accessories," weighs might well be a "part" of a bicycle *if the issue were the dutiable classification of that accessory.* Thus, to find that something would be *dutiable* as a "part" does not in the least determine that it is *not* an "accessory" for the purpose of finding out what the complete bicycle *per se* weighs pursuant to paragraph 371, with which question we are alone concerned.

It may seem that I am drawing a fine distinction, but it is essential to do this when dealing with such a nice question as that before us. If we fail to make fine distinctions and go happily galloping off after every false trail presented to us by counsel out of an abundant supply of precedents, we shall be led by astute lawyers and plausible arguments into making absurd decisions.

I repeat, therefore, that we are not in the least concerned with what is or is not a "part" of a bicycle for the purpose of levying a duty on the putative part, but solely with the issue of whether two specific items, kickstands and three-piece lighting sets, *are or are not "accessories" within* the common meaning of that term for the sole purpose of *determining what the complete bicycle weighs without its "accessories."*

Precedents, when followed, should have a direct bearing on the issue before the court and we should not blindly follow mere opinions, or parts thereof, rationalizing and explaining the reasons for decisions on entirely different issues.

Referring specifically to the *Trans Atlantic Company* case,[1] upon which the majority seems to predicate its decision, we were there dealing with what we found to be a mistaken application by the lower court of principles of law it derived from the *Willoughby Camera Stores* case.[3] As a unanimous court we were at some pains to point out that:

The "principles" which the court announced in the *Willoughby* case, except as they are applied to a fact situation *which is the same or directly comparable thereto*, are entitled only to the weight of *dictum*. [Emphasis added.]

This admonition applies here to the attempted application of a passage from the *Trans Atlantic* opinion, dealing solely with the question whether certain brackets were "parts" of door closers *for the purpose of assessing duty on the brackets*, to the unrelated issue of what, in common parlance, is a bicycle "accessory," in order to determine what the bicycle weighs, so as to assess duty on the bicycle. The situations are totally dissimilar and not comparable.

When the phrase "complete without accessories" was written into the law those words were, by the well established rule, presumably in the language of commerce according to the common meaning of the words. *Bakelite Corporation* v. *United States*, 16 Ct. Cust. Appls. 378, T.D. 43117. Furthermore, they were used in parallel with the concept of a "complete" bicycle. Our task, then, is to draw the line, determining, first, what the ordinary bicycle of commerce in the category here involved (for there are various types of bicycles) consists of. That will be our "complete bicycle." Other things sold to be attached to it will be "accessories." We will only be confused in this endeavor if we look for help—as plaintiff would have us do—to cases on what is *dutiable* as a "part" of something else, particularly if that something else is not a bicycle.

A bicycle is such a common and well-known device that we can go a certain way in determining what a contemporary complete bicycle is without the benefit of any evidence. It has a frame which is supported on two wheels with tires, a handlebar to steer the front wheel, a foot-operated crank with pedals, connected, by some such means as sprockets and a chain, to drive the back wheel, and a seat to sit on. This is, and always has been, the bare minimum of parts constituting a bicycle. Dictionaries describe it. Considering the record as a whole and the other equipment, present on the imported bicycle, as to which there is no dispute—there being only three disputed items in this proceeding—it is further evident that a "complete" bicycle of the 26″ wheel lightweight type here involved is also deemed to include handgrips on the handlebar, front and rear mudguards, hand brakes, and a chain guard.

It is also interesting to note from the record that plaintiff's own witnesses—the plaintiff being interested in establishing that all three of the protested items were *not* "accessories"—admitted that the following items are "accessories": mirrors, cyclometers, speedometers, *some lamps* sold at retail, some pumps, bells, some horns, mud flaps (generally), toe clips, *and any such items which are so made as to fit freely on all bicycles*. This gives us at least a general idea of what plaintiff's trade experts, as its witnesses were, considered to be bicycle "accessories."

Coming now to the specific items in dispute in this case, my position thereon is separately stated, as follows.

### Kickstands

I agree with the conclusion that they are not "accessories," but not for the reasons stated in the Customs Court opinion, quoted by the majority of this court as expressing its views. Those views, in essence, are to the effect that kickstands are very useful. So are rear view mirrors, pumps, and bells, all admitted by the experts to be "accessories" in the bicycle business. In my mind, a mere explanation of utility is insufficient ground for decision. As indicated above, what is an "accessory" is not an eternal verity. It changes with commercial practices and popular demand. Judicial notice is taken of the fact that kickstands gradually became popular in this country over a period of years. The record in this case shows, through the testimony of Mr. Liss of Korlis Limited, party-in-interest, that today "very few bicycles are imported without a kickstand." He also said that the kickstand is attached to the bicycle when imported. The kickstand also appears from the record to have been almost universally adopted as an item of standard equipment on domestically made bicycles, except racing bicycles and 20-inch wheel bicycles which are delivered with training wheels. For these reasons I am of the opinion that in this day and age a "complete" bicycle of the 26″ lightweight category has a kickstand as normal or standard equipment and for that reason I think it cannot *now* be classed as an "accessory" to be excluded from the weight of the bicycle, any more than the fenders or chainguard. In days gone by all of these may have been "accessory" items, but not now.

### Lighting Sets

Just the opposite situation prevails with respect to the lighting sets involved in the protest. The majority admits they "are not in great demand as compared to the kickstands," which is something of an understatement.

In their pursuit of the irrelevant question of whether the lamps would be "parts" of bicycles for the purpose of paying duty on them, the lower court and the majority both gloss over the very significant fact which appears without dispute in the record here that *out of 50,000 bicycles imported in 1959 by the party-in-interest only 2,000 came in with lighting sets.* The importer testified, "Just over 95% [imported in 1959] were without lighting sets and luggage carriers."

Another importer, Mr. Seedman, called by the party-in-interest, testified:

Q. Of the 26-inch lightweights which you import and sell what proportion do you sell, or did you in 1959, sell with lighting equipment and what without lighting equipment? A. I have our figures accurately for this year and from

our experience the percentage remains quite static. It's about the same. This year it's 73.5 percent that have no headlamps.

The meaning of the word "accessory" is not obscure. In the bicycle field it means something one buys to attach to a bicycle which already has all of its essential, customary, and basic parts so that it will function after the manner of bicycles and be a salable article of commerce. Plaintiff's witnesses named several accessory items, which are mentioned above. Webster's New Collegiate Dictionary (1960) defines the noun "accessory" thus:

1. That which contributes subordinately to an effect; an adjunct or accompaniment.

2. Any article or device that adds to the convenience or effectiveness of something else but is not essential; an appurtenance; attachment.

The older Webster's New International Dictionary (1937) says:

2. Any article or device that adds to the convenience or effectiveness of something else but is not essential, as a speedometer on an automotive vehicle.

This court, in *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, 292, T.D. 42872, speaking of an article, said:

If its use is casual, auxiliary, or optional, it is an accessory.

A brief description of the generator lighting set would be here in order to show how precisely it fits the definitions of an accessory. Such a set was put in evidence as Exhibit F by the party-in-interest. It consists of a streamlined headlamp about 3″ in diameter adjustably attached to a stamped metal mounting bracket evidently intended to be secured to the steering post. Extending from the headlamp there is a length of insulated wire sufficient to reach to the rear wheel. The wire is attached to the output terminal of a generator which is about 1½″ in diameter and 4″ long. On one end of the generator is a knurled driving wheel adapted to engage the tire of the rear bicycle wheel to be driven thereby. A mounting shaft protrudes from the side of the generator by which it is pivotally mounted on a bracket for movement through 30 to 40 degrees and a spring around the shaft urges it in one direction so it will be pressed against the tire. There is a catch which the rider can actuate which will either hold the generator out of engagement with the tire or release it. The generator bracket has parts to be clamped to a range of sizes of frame tubing and also adjustably carries a small tail-light with a red plastic lens. All joints are made adjustable with bolts and lockwashers so that each element can be properly positioned. The record shows that these sets are sometimes imported attached to bicycles and sometimes put into the toolbag of the imported bicycle, as was the case with the exemplary bicycle put in evidence. The lighting set, Exhibit F, weighs 1 lb. 10½ oz.

What else does the record testimony in this case show? Plaintiff's first witness was the customs examiner who passed the shipment, called

to describe it because the Government did not retain a sample of the imported bicycle. He said, referring to all the items involved in the protest, the carriers, kickstands, and lighting sets, "These three items are *what we consider as accessories* and not to be included in the weights for tariff purposes." [Emphasis added.] He said his authority for such exclusion was "The Bureau instructions."

Plaintiff next called Mr. Mulligan, vice-president and general sales manager of a domestic bicycle manufacturer. He said to the trial judge, in answer to his question, that *he classified as an accessory "an item that can be put on anybody's bicycle."* [Emphasis added.] He said all of the lamps *"we use* I classify as parts *because they were designed for a particular bicycle.* There are lamps that are sold at the retail level that might qualify as *an accessory."* [Emphasis added.]

Plaintiff's next witness was Mr. Snyder, an engineer, president of two affiliated bicycle companies. He said he would call a generator lighting set a "part" and further testified:

Q. Will you give your reasons? A. It will not fit any other bicycle.

He had earlier testified that "Lamps and lighting sets," listed in the Treasury Department letter as accessories to be excluded in weighing bicycles, could be either parts *or accessories.*

Plaintiff's final witness was a professional bicycle rider who went into the bicycle business and was operating a cycle store. He explained how the generator lighting set worked, said he didn't think it would fit any bicycle, and continued:

Q. Would you call that a part of that bicycle? A. I would call it a part.

No objection was made to the question as leading. On cross-examination he admitted the lighting set would fit another 26-inch bicycle with a 22-inch frame.

Out of all of this plaintiff's testimony we can distill but one significant idea, that in the eyes of the trade lights can be either parts *or accessories* and they are accessories if they will fit various models of bicycles. As to whether the lights imported with the involved bicycles would fit various bicycles, the plaintiff's testimony is inconclusive. The testimony for the party-in-interest, however, plus what we can see for ourselves by examining Exhibit F, removes any question on this score.

Hamilton Osgood, managing director of Raleigh Industries of America, importers and sellers of bicycles, called by the party-in-interest, said that his company also sold generator lighting sets such as Exhibit F. When he was being questioned about that exhibit by *plaintiff's* attorney during a discussion of its admissibility in evidence, he testified [emphasis added]:

Q. For what bicycle was that made? A. *I haven't seen any bicycle it will not fit yet, this one.*

Q. It's made for a bicycle with a certain size tubing, isn't it? A. It is made—yes, but there are long bolts which will *adapt it to most sizes.*

Q. Will it adapt it to all sizes? A. *I have never seen a bicycle which it could not be used on yet.*

Q. Will you name the types of bicycles it can be used on rather than the ones that you have never seen? You haven't seen all types, have you? A. Well, I hope I have seen most of them. In my experience—can I answer the question this way: In my experience and to the best of my belief and knowledge *there is no bicycle which this cannot be made to fit.*

Q. Do you know the size of the tubing on the rear of most bicycles? A. They vary a great deal.

Q. That's right. What's the largest size you know? A. I wouldn't dare say because I am not sure of my facts.

Q. You don't know whether this would fit the largest size tubing or not? A. I do know that I have myself fitted it on large-size tubing.

Q. Then you altered this as it's offered in evidence— A. Yes.

Q. (Cont'g) to make it fit another bicycle? A. I don't quite understand you.

Q. In its present condition it would not fit a bicycle with a larger size tubing, would it? A. I disagree; it would fit.

Q. You just said that if it had a larger-size tubing you would make it fit by using a longer bolt. A. I didn't say that. I said that the long bolts on that give adequate spread to the brackets so that it would fit, to my knowledge.

Q. Well, there are American-made bicycles that have greater tubing than this is made for? A. I disagree, not to my knowledge.

The exhibit was then received in evidence and the attorney for the party-in-interest asked Mr. Osgood:

Q. Let me direct your attention to Party In Interest Exhibit F, which is the generator set. Is that type of lighting equipment known in the trade as a part or as an accessory? A. As an accessory.

Bicycle lamps have been held to be "accessories," and that holding has at least twice been recognized by this court without the slightest suggestion of criticism. In *Mead Cycle Co.*, 28 Treas. Dec. 389, T.D. 35223 (1915), *cycle lamps*, pump clips, pumps, push bells and tool bags were all *held to be accessories* and not parts. In the *Bosch Magneto* case,[5] wherein the issue was whether auto lights and horns were parts of automobiles or manufactures of metal, this court recited that holding of the *Mead Cycle* case and said (p. 572):

The difference in the manner of operating a bicycle and an automobile, and the results growing out of their inefficient operation are so different that it is at once apparent that the decision in the Mead case has little, if any bearing on the facts at hand.

In the *American Steel & Copper* halftone screen case,[8] this court again specifically recited the holding of the *Mead* case, along with others, expressed no disapproval, and distinguished it saying (p. 141):

An examination of these cases will disclose, we think, that the controlling feature in each of the cases cited was a consideration of the question whether the particular articles imported were, or were not, essential to the operation or use of the particular thing of which they were said to be parts, and, in the absence of which the thing in question was not capable of the use for which it

was intended. In each case cited, the article involved was entirely able to function and perform its original purpose without the thing imported.

We are aware that the Customs Court reversed itself in *Eric Wedemeyer* v. *United States*, 7 Cust. Ct. 141, C.D. 556, and, contrary to its holding in the *Mead* case, held bicycle lamps to be parts of bicycles *for the purpose of assessing the lamps with duty*, applying the reasoning of this court in the *Bosch* case notwithstanding this court's view, above quoted, that the situations were not at all parallel. But we are not here assessing the *lamps* with duty. We are deciding what "accessories" to exclude in weighing the *bicycle*.

The court below and the majority lay great stress on state laws requiring bicycles ridden at night to show lights. But there is no law requiring bicycles to be ridden at night. The evidence is that the type of bicycle here involved is mostly (95%) used by children 14 years of age or less and that bicycle riders are rarely seen at night in this country. There is no inconsistency between said state laws and a holding that lighting sets are "accessories" for the purposes of paragraph 371. In fact *accessories* are the very things one buys, not only for bicycles but for cars, guns, cameras, fishing gear, boats, and other useful pieces of apparatus to extend the range of their usefulness. The considerations the Customs Court (quoted on page 1 hereof) applied in finding it was so clear and so obvious that the luggage carriers were accessories are equally applicable to the lighting sets. The place where the reasoning runs aground is, not in deciding whether or not they are "accessories," but in considering the irrelevant question whether under the law they *would be* "parts" for the purpose of assessing duty *on them*. That question is not involved in this case.

The reasoning put forward by the plaintiff, which has unfortunately been adopted, is that we must look to see whether under the case law any of these things would be chargeable with duty as parts of bicycles. To quote from plaintiff's brief, a typical passage reads (p. 19):

Had each and all of the appliances imported with the bicycles in the case at bar been imported independently of the instant shipment, they would have undoubtedly been classified by the collector as *parts of bicycles*.

Perhaps they would have been so *classified*. It is an irrelevant consideration. And again:

We think it is with equal inanity to argue that appliances especially made, dedicated and adapted to but one use, that of a bicycle, are not parts of a bicycle.

At the risk of seeming inane, we ask plaintiff the question: Do not practically all *bicycle* "accessories" meet those specifications? And if so, what "accessories" are left to be excluded when bicycles are weighed. Just what did Congress have in mind?

The generator lighting sets should be held to be "accessories" for

the purpose of determining the weight of the bicycles. No suggestion is made as to how they should be classified for assessing duty on them.

_____

SMITH, Judge, concurring in part and dissenting in part.

The two imported items involved on this appeal are kickstands and lighting sets for bicycles. The issue is whether such items should be included in the weight of certain imported bicycles in order to determine the proper tariff upon such bicycles. The majority finds that both items are parts of bicycles and holds that they should be included in the weight of the bicycles. Reliance is placed on our decision in *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758 as support for this holding. The *Trans Atlantic* case and the cases therein referred to are cases in which the court was passing upon the proper classification of the imported merchandise either as a "part" of other classified merchandise or as an article subject to classification under some other paragraph. Each of these cases turned on particular legal issues and facts which differ so from the legal issues and facts here presented that I do not consider the *Trans Atlantic* case to be controlling.

I concur with the majority that the court below, on the basis of the facts shown in the record, properly found that kickstands are not "accessories" as the term is used in paragraph 371 of the Tariff Act of 1930 as modified. However, this concurrence is based on the fact situation here. As Judge Rich has pointed out in his dissenting opinion, the record establishes that kickstands, at the time of the importations in issue, had become an item of standard equipment on bicycles and establishes that "very few bicycles are imported without a kickstand". I therefore concur in the holding of the majority that a kickstand is not an "accessory" within the meaning of paragraph 371 of the Tariff Act of 1930 as modified by T.D. 51802, but for the reason pointed out by Judge Rich in his opinion.

Paragraph 371, as originally enacted in the Tariff Act of 1930, related to "Bicycles, and parts thereof, not including tires". This paragraph was modified in 1947 by the General Agreement on Tariffs and Trade (GATT), T.D. 51802, as supplemented by Presidential proclamation, T.D. 53883. The provision presently before us for construction, "bicycles * * * complete without accessories" was introduced by the GATT modification of paragraph 371. Thus any interpretation of what is or what is not an "accessory" within the meaning of this modification should, if possible, give effect to the intentions of the negotiators of the agreement. *U.S.* v. *Good Neighbor Imports, Inc.*, 33 CCPA 91, C.A.D. 321.

When the negotiators of the GATT modification of Par. 371 used the word "accessories" in its present context, they used it as a term of

commerce and this requires us to determine from the record here what this term means in relation to the imported bicycles. Other than this, the intent of the negotiators is not clearly apparent from the language of the agreement. We turn then for guidance to the "legislative history" of the agreement which includes the Summaries of Tariff Information and the Trade Agreement Digests prepared by the Tariff Commission for use by the GATT negotiators.[1]

The Trade Agreement Digest, Vol. III, Part 2 (November 1946), p. 154, and the Summaries of Tariff Information, Vol. III, Part 4 (1948) call attention to the fact that while domestic producers of bicycles were primarily engaged in manufacturing the heavy "American-type" bicycles with balloon tires, most of the bicycles imported had been of the lighter types for adult use. On page 26 of the Summaries, supra, it is stated:

Outstanding features of the popular American-type bicycle, which attempts to simulate a motorcycle in appearance, are balloon-type tires, brightly finished fittings and *accessories, including lamps,* horns, carriers and "tanks". [Emphasis added.]

The Digest, supra, at pages 154–155, states that:

Most adult riders, on the other hand, wish their bicycles to be as light and as easy-riding as possible. For this class of riders, a light-weight type is made. * * * All unnecessary structural members and *accessories* are omitted. [Emphasis added.]

It seems clear, therefore, that the negotiators of GATT, in using the words "complete without accessories," were concerned with the light-weight type of bicycle described in the above quoted portion of the Digest of Tariff Information and in which "all unnecessary structural members and accessories are omitted" to provide a bicycle as light and easy riding as possible. The provisions of paragraph 371 as amended refer to "bicycles * * * not designed for use with tires having a cross-sectional diameter exceeding 1⅝ inches" which was intended to cover light-weight or "British-type" bicycles, and not American-type bicycles with balloon tires.

It is clear from the record that this type of bicycle is usually imported and sold without lighting sets. It is interesting to note that the quotation from the Summaries, supra, referred to lamps as "accessories" for American-type bicycles. Certainly if lamps were accessories on the American-type bicycles, it seems to me they are even more "accessories" on a light-weight, stripped-down bicycle, the great majority of which as the record here shows, and as pointed out by Judge Rich, were imported without lighting sets.

The majority has emphasized the fact that without lighting sets,

[1] 19 U.S.C. 1354, 1360 require the President to request the Tariff Commission to investigate and report to the President its findings on the effect of any proposed modification, restriction or imposition of duties on all articles which are to be affected by the proposed agreement. See *U.S.* v. *Good Neighbor Imports, Inc.,* supra, and *U.S.* v. *Mercantil Distribuidora et al.,* 43 CCPA 111, C.A.D. 617.

the bicycles cannot be used at night. I do not agree that this fact makes the lighting sets not an accessory. The record showing that most bicycles are sold without lighting sets indicates to me that the purchasers do not care to ride them at night and are content to restrict themselves to daylight operation. Further, I agree with Judge Rich that an attachment, purchased to extend the use or limitations of the parent object, is the very essence of what is an accessory. A lighting set is useless weight on a bicycle in daytime and does not contribute in any way to the basic daytime operation of the bicycle.

I therefore agree with Judge Rich that lighting sets should be excluded from the weight of the bicycle in determining the proper duty under paragraph 371 and to this extent I too dissent from the opinion of the majority.