No. 69019.—Motorola, Inc., and International Expediters, Inc. *v.* United States, protests 60/27796–11760, etc. (Chicago).

FORD, Judge: By this action, plaintiffs seek to recover a portion of the 15 per centum ad valorem duties assessed by the collector of customs on certain magnetic earphones, under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides as follows:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    *       *       *       *       *       *       *

Other articles * * *_____ 15% ad val.

The controversy in the cases at bar involves the suits listed in schedule "A," attached hereto and made a part hereof, which have been consolidated for the purpose of trial.

The plaintiffs alternatively contend that said earphones are properly subject to duty at the rate of 12½ per centum ad valorem as parts of electrical radio apparatus, or at 13¾ per centum ad valorem as articles having as an essential feature an electrical element or device, both under the provisions of said paragraph 353, as modified by the Torquay Protocol to the General Agreement of Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

The record herein consists of the testimony of one witness, called on behalf of plaintiffs, and three exhibits received in evidence as plaintiffs' exhibits 1 through 3. Plaintiffs' exhibit 1 is a sample of the imported earphones. Plaintiff's exhibit 2 is a schematic diagram of an earphone, and plaintiffs' exhibit 3 is a transistor radio. The witness, Norman W. Parker, testified that the component parts of an earphone are a coil, a ferrite ring, the diaphragm, and the cable connected to the coil with a plug at the end for the purpose of inserting it into the receiver; that all of these, except the cable and plug, are enclosed within a plastic housing; that the entire earphone is known as a transducer, which is a device for converting electrical energy into acoustical energy; that, in his opinion, the transducer does not control, distribute, modify, produce, or rectify electrical energy; that the coil, cord, and plug constitute an electrical element without which the earphone could not function.

The witness further testified that, by virtue of the size of the plug, such earphones are used only in portable radios; that the merchandise covered by these protests involved 15-ohm and 20-ohm earphones, the only difference being in the number of turns on the coil inside the earphone which, in turn, creates the electrical inpedance; that plaintiffs' exhibit 1 fits into plaintiffs' exhibit 3 and may also fit into other radios but not necessarily all radios, since there are at least three sizes of plugs used for portable radios; that exhibit 3, the radio, is designed to operate with an earphone, although it has a speaker contained within itself; that when the earphone is inserted the speaker is disconnected; that an earphone is particularly useful in areas where there is a lot of noise and that, in his opinion, the radio could not function in such an area without the use of the earphone.

It was stipulated that the involved earphones are in chief value of metal.

Based upon this record, plaintiffs contend that the imported earphone does not control, distribute, modify, produce, or rectify electrical energy and, accordingly, the classification of the collector of customs is erroneous. The witness, in describing the operation of the earphone, considered it to be a transducer which is an article used to convert electrical energy to acoustical energy. This, in fact, is confirmed by the following definition contained in Webster's New International Dictionary, second edition, unabridged (1949) :

**transducer,** *n.* [L. *transducers* to lead across.] *Physics.* A device actuated by power from one system and supplying power in the same or any other form to a second system. For example, a telephone receiver is a transducer, actuated by electric power and supplying acoustic power to the surrounding air.

We are of the opinion, based upon the record, that the imported merchandise does not control, distribute, modify, produce, or rectify electrical energy and is, therefore, not properly subject to classification under the provision of paragraph 353 covering said functions.

The question as to whether or not the imported earphones are properly subject to classification under the provision for parts of electrical radio apparatus must next be considered. The most recent pronouncement on the subject of parts is in the case of *Gallagher & Ascher Company* v. *United States,* 52 CCPA —, C.A.D. 849, which involved auxiliary gasoline-operated heaters which were designed for the Volkswagen automobiles.

In the *Gallagher & Ascher* case, *supra,* the appellate court reviewed a number of its previous decisions on parts, including *United States* v. *Pompeo,* 43 CCPA 9, C.A.D. 602 (superchargers held to be parts of automobiles) : *Trans Atlantic Company* v. *United States,* 48 CCPA 30, C.A.D. 758 (mounting brackets for door closers held to be parts of door closers) ; *United States* v. *Willoughby Camera Stores, Inc.,* 21 CCPA 322, T.D. 46851 (tripods held not to be parts of cameras) ; *United States* v. *Bosch Magneto Co.,* 13 Ct. Cust. Appls. 569, T.D. 41434 (lamps and horns held to be parts of automobiles) ; *Welte & Sons* v. *United States,* 5 Ct. Cust. Appls. 164, T.D. 34249 (music rolls for pianos held to be parts of musical instruments) ; *Dubrow & Hearne Mfg. Co.* v. *United States,* 9 Ct. Cust. Appls. 177, T.D. 38001 (shuttles for embroidery purposes held to be parts of sewing machines) ; *United States* v. *American Steel and Copper Plate Co.,* 14 Ct. Cust. Appls. 139, T.D. 41673 (halftone screens held to be parts of cameras) ; *Stoeger* v. *United States,* 15 Ct. Cust. Appls. 291, T.D. 42472 (a 32-shot drum for a pistol held to be parts of pistols).

The appellate court, in *Gallagher & Ascher, supra,* in reviewing the *Pompeo* and *Trans Atlantic* cases, *supra,* for the purpose of distinguishing the *Willoughby* case, *supra,* concluded that where an article is dedicated to a sole specific use and is necessary for the efficient operation of the article to which it is dedicated when once attached, it becomes a part of said article.

In the instant case, the earphones are exclusively designed for use in portable radios and when attached to the said portable radio, the speaker being automatically disconnected, the earphones, in the performance of the function for which they are designed, become a part of the radio.

A review of the official papers indicates that protest 61/6205 was liquidated on September 14, 1960, and the protest filed on November 21, 1960. Accordingly, the protest having been filed after more than the 60 days prescribed by section 514 of the Tariff Act of 1930, is untimely and is, therefore, dismissed.

To the extent indicated, the claim in the protests that the involved merchandise is properly dutiable under the provisions of paragraph 353, *supra,* as parts of electrical radio apparatus, except as to protest 61/6205, is sustained. In all other respects, the protests are overruled.

Judgment will be entered accordingly.