(C.D. 3217)

MIDLAND INTERNATIONAL CORPORATION v. UNITED STATES

United States Customs Court, Second Division

(Decided December 6, 1967)

*Frederick W. Hess* and *Waters & Morris* for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Bernard J. Babb* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The protests listed above, consolidated for the purpose of trial, are directed against the classification by the collector of customs at St. Louis, Missouri, of certain earphones imported in conjunction with tape recorders. The earphones were classified under the provisions of paragraph 353, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as articles suitable and producing, rectifying, controlling, or distributing electrical energy and, as such, were assessed with duty at the rate of 15 per centum ad valorem.

Plaintiff, alternatively, claims said earphones are properly subject to duty at 12½ per centum ad valorem or 11½ per centum ad valorem, depending upon date of entry, under the provisions of paragraph 353 of said act, as modified by T.D. 55816, as articles having as an essential feature an electrical element or device or at the rates of 13½ or 12 per centum ad valorem, depending upon date of entry, under the provisions of paragraph 1542 of said act, as modified by said T.D. 55816, *supra*, as parts of phonographs, etc.

The record consists of the testimony of two witnesses and eight exhibits. The first witness called on behalf of plaintiff, Mr. Howard Pickle, testified that he is import manager of the importing corporation and identified the earphones on the invoices covering the tape recorders. The tape recorders are ordered complete and consist of the recorder, microphone, earphone, and recording tape. The merchandise is sold by catalog and through dealer participation at trade fairs. Plaintiff's exhibit 1, a catalog of plaintiff, offers the tape recorder designated as 12–204 as complete with earphone, microphone, empty 3-inch reel and 3-inch reel of tape.

Mr. Ernest Krahenbuhl, merchandising coordinator of plaintiff, was next called on its behalf. This witness prepared specifications for the

foreign manufacturer and examined the merchandise to see if it met the specifications. He identified the earphones involved, which were received as plaintiff's exhibits 2 and 3, and also introduced a diagram of an earphone prepared by an employee of his firm, and which was received as plaintiff's exhibit 4. The earphone consists of a metal diaphragm, ferrite core, the copper coil wound around the metal pole piece, the fiber terminal board, the two-conductor cable, and the plug. The earphone transforms electrical energy into acoustical energy but does not control, modify, distribute, produce, or rectify electrical energy. An article which transforms electrical energy into acoustical energy is also known as a transducer. The electrical component of the earphone is essential to its operation.

The operation of the tape recorders involved, exhibits 5 and 7, was described by the witness. Exhibits 6 and 8, the operation instructions of said tape recorders, were received in evidence. It would appear from the record that the earphones have a dual purpose. In the first instance, said purpose is to monitor the recording. The witness was of the opinion that, in order to obtain an acceptable level of recording, since there are no recording level meters, monitoring by earphones would be necessary in order to accomplish this purpose. In order to monitor during recording, the earphone is plugged into the tape recorder and the party monitoring the recording adjusts the volume control to a level which is suitable to his hearing. The second purpose of the earphone is for privacy. An example of this was given whereby a salesman using the tape recorder as a dictating machine in his car could on his return have a girl in his office use the earphone on playing the tape back in order to have it typed, and at the same time without the rest of the office hearing or being disturbed by the dictating.

The record also establishes that earphones having the proper size plug and impedance could be used with other tape recorders, dictating machines, radios, transistor radios, television sets, etc.

By virtue of the decision in *Motorola, Inc., and International Expediters, Inc.* v. *United States*, 54 Cust. Ct. 303, Abstract 69019, defendant in its brief concedes the classification of the collector to be erroneous. Defendant, however, contends plaintiff has failed to establish its claim that the imported earphones are parts of tape recorders, radios, phonographs, gramophones, graphophones, or similar articles, or are articles having as an essential feature an electrical element or device.

In the *Motorola* case, *supra*, the court had before it for determination the proper classification of certain earphones. The collector therein classified said earphones in the same manner as those in the instant

case. However, the claim in that case was that said earphones were parts of radios. In arriving at our determination that said earphones were improperly classified, we found, based upon the record therein, that an earphone is considered to be a transducer which is an article used to convert electrical energy into acoustical energy. We then set forth the following definition of the term "transducer" which confirmed the witness' description:

transducer, n. [L. transducers to lead across.] Physics. A device actuated by power from one system and supplying power in the same or any other form to a second system. For example, a telephone receiver is a transducer, actuated by electric power and supplying acoustic power to the surrounding air.

In the Motorola case, supra, the record established the involved earphones to be designed exclusively for use with portable radios and the court, therefore, held said earphones to be parts of radios.

In the instant case, the witness likewise considered an earphone to be a transducer. In view of this evidence, and the concession of defendant, we find said earphones are not articles which control, distribute, modify, produce, or rectify electrical energy within the intendment of said provision contained in paragraph 353, supra, covering said functions.

The drawing, plaintiff's exhibit 4, together with the testimony of Witness Krahenbuhl as to the parts constituting an earphone, confirms the fact that the imported earphones do contain electrical parts, essential to their operation, which would bring them within the purview of that portion of paragraph 353 which provides for articles having as an essential feature an electrical element or device. The definition of the term "transducer", supra, also leads us to this conclusion.

Since the record establishes that said earphones may be utilized in conjunction with a number of various articles, provided they have the proper size plug and impedance, they are not parts of tape recorders or any of the articles enumerated in paragraph 1542, supra. Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849.

The protests are, therefore, sustained insofar as they claimed that said earphones are properly dutiable at 12½ or 11½ per centum ad valorem, depending upon date of entry, under the provisions of paragraph 353, supra. All other claims are overruled.

Judgment will be entered accordingly.